## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMC CORPORATION,<br><br>     Plaintiff,<br><br>  v.<br><br>JOHN CHEVEDDEN and<br>JAMES MCRITCHIE,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 14-____-___<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND OTHER EQUITABLE OR INJUNCTIVE RELIEF

Plaintiff EMC Corporation ("EMC" or the "Company"), by and through its undersigned

attorneys, files this Complaint against Defendants John Chevedden ("Chevedden") and James

McRitchie ("McRitchie") (collectively, "Defendants").  EMC seeks a judgment declaring that it

is entitled to exclude Chevedden's shareholder proposal (the "Proposal") from the proxy

materials for EMC's 2014 annual shareholders meeting ("2014 Meeting").  In the alternative,

because EMC lacks an adequate remedy at law and will be otherwise irreparably harmed, EMC

seeks a preliminary and permanent injunction preventing the Defendants and those working in

connection with them from: (i) continuing to seek the inclusion of the Proposal in EMC's proxy

materials; (ii) presenting in any way the Proposal at EMC's shareholder meeting; and (iii)

proceeding in violation of Rule 14a-8.  In support of this Complaint, EMC alleges upon personal

knowledge as to itself and its own acts and, unless otherwise specifically stated, upon

information and belief as to all other matters as follows:

## SUMMARY AND NATURE OF THE ACTION

1.      This action arises out of Chevedden's submission of the Proposal to EMC on November 3, 2013, and resubmission to EMC on November 15, 2013, requesting that it be included in EMC's proxy materials for the 2014 Meeting ("Proxy Materials").  The Proposal contains multiple procedural and substantive deficiencies, each of which provides a sufficient, independent basis for the Proposal's exclusion from EMC's Proxy Materials under Rule 14a-8 of the Securities Exchange Act of 1934, as amended ("Rule 14a-8"), which governs the submission of shareholder proposals for inclusion in a company's proxy materials.  *See* 17 C.F.R. § 240.14a-8.  In particular, Chevedden fails to satisfy the ownership requirement that is a prerequisite to submitting a proposal for inclusion in a company's proxy materials.  In addition, various aspects of the Proposal and its supporting statement are false and misleading.  Under the express terms of Rule 14a-8, EMC may properly exclude the Proposal from its Proxy Materials.

2.      Defendants are well aware that their conduct is not permitted under Rule 14a-8.  They have been involved in numerous cases in Federal District Courts across the country, in which companies have sought judicial relief to address improper proposals from Chevedden.  To date, no court has required a company to include a proposal from Chevedden in company proxy materials.  *See Waste Connections, Inc. v. Chevedden*, No. 4:13-cv-00176 (S.D. Tex. June 3, 2013), Doc. 32 at 1-2, *appeal docketed*, No. 13-20336 (5th Cir. June 18, 2013); *Apache Corp. v. Chevedden*, No. 4:12-cv-00137 (S.D. Tex. Feb. 13, 2012), Doc. 10 at 1; *KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415 (S.D. Tex. 2011), *later proceeding at* 2011 U.S. Dist. LEXIS 36431, at *10 (S.D. Tex. Apr. 4, 2011), *aff'd*, 478 F. App'x 213 (5th Cir. 2012) (per curiam); *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 724 (S.D. Tex. 2010).  Chevedden and McRitchie have demonstrated a pattern of abusing Rule 14a-8 at many companies, as the three freshly-filed suits against Chevedden since mid-December 2013 make clear.  *See Omnicom Grp. Inc. v.*

*Chevedden*, 1:14-cv-00386-LLS (S.D.N.Y. Jan. 21, 2014); *Chipotle Mexican Grill, Inc. v.*

*Chevedden*, 1:14-cv-0018-WJM-KMT (D. Col. Jan. 2, 2014); *Express Scripts Holding Co. v.*

*Chevedden*, 4:13-cv-02520-JAR (E.D. Mo. Dec. 18, 2013).  Those suits, similar to this one,

confirm that Chevedden is a serial abuser of the shareholder proxy proposal process established

by the rules of the United States Securities and Exchange Commission ("SEC" or the

"Commission").

      3.     In joining together to submit proposals in violation of Rule 14a-8, Chevedden and

McRitchie are inflicting an undue waste of resources on EMC, and causing harm to EMC and its

shareholders by demanding inclusion of a vague and indefinite (and, thus, false and misleading)

proposal in EMC Proxy Materials.  Moreover, because Chevedden lacks any economic stake in

EMC, he is seeking to influence EMC's governance without bearing the consequences of the

Proposal on EMC.

      4.     EMC needs a prompt and decisive resolution of this case.  For EMC's Proxy

Materials to reach shareholders in advance of the 2014 Meeting on April 30, 2014, and otherwise

comply with SEC rules, EMC must finalize the Proxy Materials by March 14, 2014.  Because of

these timing and logistical constraints, EMC seeks a declaration from this Court by March 11,

2014, that the Proposal may be excluded from its Proxy Materials.  In the alternative, if this

Court is not able to grant EMC judgment on either Count in this Complaint on or before March

11, 2014, EMC prays for a declaration that, if this Court grants EMC judgment after March 11

2014 but before the 2014 Meeting, that EMC need not require its shareholders to vote on the

Proposal at the meeting.  In the alternative, because EMC lacks an adequate remedy at law and

will be otherwise irreparably harmed, EMC seeks a preliminary and permanent injunction

preventing the Defendants and those working in connection with them from: (i) continuing to

seek the inclusion of the Proposal in EMC's Proxy Materials; (ii) presenting in any way the Proposal at EMC's shareholder meeting; and (iii) proceeding in violation of Rule 14a-8.

## PARTIES

5.      EMC is a Massachusetts corporation with its principal place of business and corporate headquarters at 176 South Street, Hopkinton, Massachusetts 01748.

6.      Chevedden is an individual who resides in Redondo Beach, California.  He may be served with process and a copy of this complaint at 2215 Nelson Avenue, No. 205, Redondo Beach, California 90278.

7.      McRitchie is an individual residing in Elk Grove, California.  He may be served with process and a copy of this complaint at 9295 Yorkship Court, Elk Grove, California 95758.

## JURISDICTION AND VENUE

8.      This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331.  Additionally, this Court has subject-matter jurisdiction over this action under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, because the acts or transactions upon which this lawsuit is based occurred in this district, and because Defendants have transacted business with respect to the matters at issue in this lawsuit.

9.      This Court also has diversity jurisdiction over this matter under 28 U.S.C. § 1332, as there is complete diversity between EMC and Defendants and the declaratory and other relief sought is of sufficient gravity.

10.     This Court has the power to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  A case of actual controversy within this Court's jurisdiction exists between the parties concerning Chevedden's right to include the Proposal in EMC's Proxy Materials for the 2014 Meeting.  A declaratory judgment is necessary and appropriate to resolve this dispute and the rights of the parties so that EMC may exclude the Proposal from

consideration at the 2014 Meeting without incurring the risks of liability to Defendants or an

SEC enforcement action.  *See KBR*, 478 F. App'x at 215 (concluding there was Article III

standing authorizing declaratory relief where "Chevedden's proposal put KBR to a choice

between spending a significant sum to revise its proxy statement, or excluding Chevedden's

proposal and exposing itself to potential litigation").

11.     Personal jurisdiction and venue are proper in this district, under 28 U.S.C.

§ 1391(b), because EMC is a Massachusetts corporation and maintains its principal place of

business in Massachusetts, and because Defendants have directly, intentionally, and repeatedly

transacted business in this district that is central to the issues in this lawsuit.  Over the course of

the past eight years, Chevedden—most recently, in collaboration with McRitchie—has sent

numerous e-mails and submitted numerous shareholder proposals to EMC in this district seeking

to influence how EMC conducts its business in this district.  Chevedden has also demanded—

purportedly on behalf of and in collaboration with McRitchie—that EMC include his Proposal in

its Proxy Materials for consideration at its upcoming 2014 Meeting, which will be held in this

district.  Defendants have therefore actively sought to influence the manner in which EMC

conducts its business in this district, through a Proposal that fails to comply with Rule 14a-8.  A

substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

## REGULATORY BACKGROUND

12.     Section 14(a) of the Exchange Act makes it unlawful "to solicit any proxy" in

"contravention of such rules and regulations as the Commission may prescribe as necessary or

appropriate in the public interest or for the protection of investors."  Section 14(a) thus

"authorizes the [SEC] to adopt rules for the solicitation of proxies, and prohibits their violation."

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1086 (1991).  The SEC has promulgated

detailed regulations under Exchange Act Section 14(a).

13.     Rule 14a-8 (17 C.F.R. § 240.14a-8), the rule at issue in this case, provides an exception to the general rule that shareholders must prepare their *own* proxy materials to raise a matter at a company annual meeting.  Rule 14a-8 provides a channel through which a shareholder owning a specified stake in the company may submit a proposal for inclusion in the company's proxy materials—at the company's expense—so long as specific eligibility and procedural requirements are met and a substantive exclusion does not apply.

14.     In particular, Rule 14a-8(b)(1) provides, in relevant part, that "[i]n order to be eligible to submit a proposal, [the shareholder] must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date you submit the proposal."  The SEC imposed the minimum ownership requirement after it recognized that "abuse" of the rule "could be curtailed by requiring shareholders who put the company and other shareholders to the expense of including a proposal in a proxy statement to have some measured economic stake or investment interest in the corporation."  Amendments to Rule 14a-8, Exchange Act Release No. 34-20091, 48 Fed. Reg. 38218, 38219 (Aug. 23, 1983).

15.     Separately, Rule 14a-8(i)(3) permits the exclusion of a shareholder proposal if the proposal or supporting statement is contrary to any of the Commission's proxy rules or regulations, including Rule 14a-9, which "prohibits the solicitation of proxies by means of materially false or misleading statements," *Sandberg*, 501 U.S. at 1086.

16.     Under Rule 14a-8(j), a company must notify the SEC when it plans to exclude a shareholder proposal from the company's proxy materials.  A company generally files a letter with the staff of the SEC's Division of Corporation Finance (the "Staff ") with the reasons for its decision.  If the Staff agrees that the proposal is excludable, it issues a no-action letter, stating

that the Staff will not recommend that the SEC proceed against the corporation for excluding the proposal.  The no-action letter, however, is an informal response, and does not amount to an official statement of the SEC's views.  The SEC has made clear that "no-action letters do not and cannot adjudicate the merits of a company's position with respect to the proposal" and that "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials."  SEC Div. of Corp. Fin., *Informal Procedures Regarding Shareholder Proposals, available at* http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm.

## THE PARTIES' PRIOR HISTORY

**B.     Chevedden's Pattern of Abuse of Rule 14a-8 at Other Companies**

17.     Chevedden is a serial proponent of shareholder proposals to U.S. corporations (including EMC).  For example, in the 10-year period from 2000 to 2010, Chevedden accounted for more than 800 proposals considered by the SEC Staff, while *everyone else in the world* accounted for approximately 7,000 such proposals.

18.     Chevedden's serial proponent actions are abusive and subvert the federal securities laws.  His pervasive disregard for the requirements of Rule 14a-8 have caused several companies to seek federal declaratory relief, and, in each decided case, courts ruled against Chevedden.  *See Waste Connections*, Doc. 32 at 1-2; *Apache Corp.* (2012), Doc. 10 at 1; *KBR*, 2011 U.S. Dist. LEXIS 36431, at *10; *Apache*, 696 F. Supp. 2d at 724.

19.     Chevedden has not been deterred by those prior decisions, and has again submitted numerous proposals to companies for annual meetings in 2014, leading at least three companies since mid-December 2013 to sue in Federal District Court, seeking declarations of invalidity as to Chevedden's proposals.  *See Omnicom*, 1:14-cv-00386 (S.D.N.Y. Jan. 21, 2014);

*Chipotle Mexican Grill*, 1:14-cv-0018 (D. Col. Jan. 2, 2014); *Express Scripts*, 4:13-cv-02520

(E.D. Mo. Dec. 18, 2013).

**B.      Chevedden's Proposal to EMC for 2014**

20.      EMC is a global leader in enabling businesses and service providers to transform

their operations and deliver IT as a service.  EMC's common stock is traded on the New York

Stock Exchange.

21.      The Proposal that Chevedden sent to EMC on November 3 and 15, 2013, provides

in relevant part as follows:

> Shareholders request that our Board of Directors to [sic] adopt a policy, and
> amend other governing documents as necessary to reflect this policy, to require
> the Chair of our Board of Directors to be an independent member of our Board.
> This independence requirement shall apply prospectively so as not to violate any
> contractual obligation at the time this resolution is adopted. Compliance with this
> policy is waived if no independent director is available and willing to serve as
> Chair. The policy should also specify how to select a new independent chairman
> if a current chairman ceases to be independent between annual shareholder
> meetings.

(Proposal (attached hereto as Exhibit A, at 4-5).)

22.      On November 3, 2013, Chevedden—who does not appear to own a single share of

EMC stock—submitted to EMC a copy of the Proposal for inclusion in EMC's Proxy Materials.

Attached to the submission was an October 21, 2013 letter from McRitchie, which stated that

McRitchie intended the letter to serve as his "proxy for John Chevedden and/or his designee to

forward this Rule 14a-8 proposal to the company and to act on [his] behalf regarding this Rule

14a-8 proposal, and/or modification of it, for the forthcoming shareholder meeting before, during

and after the forthcoming shareholder meeting."  (Nov. 3, 2013 e-mail from Chevedden,

attaching the Proposal and Oct. 21, 2013 McRitchie letter (attached hereto as Exhibit A).)

McRitchie's letter requested that EMC direct all future communications about the Proposal to

Chevedden.  (*See id.*)

23.     In compliance with the requirements of Rule 14a-8, EMC pointed to deficiencies in the Proposal in correspondence described below.  *See infra* ¶¶ 26-27.  By e-mail dated November 15, 2013, Chevedden resubmitted to EMC an unaltered copy of the Proposal. Attached to Chevedden's e-mail, in addition to the unaltered copy of the Proposal and McRitchie's October 21, 2013 "proxy" letter, was a letter dated November 13, 2013, from McRitchie, again asserting that McRitchie was "authoriz[ing] John Chevedden to act as [his] agent regarding this Rule 14a-8 proposal before, during, and after the forthcoming shareholder meeting."  (Nov. 15, 2013 e-mail from Chevedden, attaching the Proposal, Nov. 13, 2013 McRitchie letter, and Oct. 21, 2013 McRitchie letter (attached hereto as Exhibit B).)

24.     EMC sought the SEC Staff's concurrence in its exclusion of the Proposal and its supporting statement from EMC's 2014 Proxy Materials, raising one of the four grounds for exclusion alleged herein.  (*See* Letter from R. Lee, on behalf of EMC, to SEC Div. of Corp. Fin. (Dec. 20, 2013) (attached hereto as Exhibit C).)  In a letter dated January 16, 2014, the SEC Staff notified EMC of the Staff's informal view that it did not agree with EMC on that one basis for exclusion.  (*See* Letter from SEC Div. of Corp. Fin. to R. Lee (Jan. 16, 2014) (attached hereto as Exhibit D).)  The Staff did not "adjudicate the merits" of the questions now before this Court. *See supra* ¶ 16.

## THE PROPOSAL IS INVALID UNDER RULE 14A-8 AND WARRANTS EXCLUSION FROM EMC'S PROXY MATERIALS

25.     The Proposal has multiple procedural and substantive deficiencies, each of which is independently sufficient to warrant exclusion of the Proposal from EMC's Proxy Materials under Rule 14a-8.

**A.**     **The Proposal Is Invalid Because Chevedden Has Not Satisfied Rule 14a-8(b)'s Ownership Requirement**

26.     After receiving the Proposal from Chevedden initially, EMC sent Chevedden a letter on November 11, 2013, copying McRitchie, and noting various deficiencies in the Proposal. ("Deficiency Notice").  (*See* Nov. 11, 2013 e-mail from R. Lee, on behalf of EMC, to Chevedden, attaching Nov. 11, 2013 letter (attached hereto as Exhibit E).)

27.     The Deficiency Notice stated that it was unclear whether Chevedden or McRitchie was the proponent of the Proposal.  The Deficiency Notice explained that, if Chevedden is the proponent of the Proposal, the submission does not satisfy Rule 14a-8 because Chevedden failed to provide EMC with the proof of ownership required under Rule 14a-8(b). The Deficiency Notice further explained that, if McRitchie is the proponent of the Proposal, the submission also fails to satisfy Rule 14a-8, as McRitchie did not submit the Proposal to EMC directly, along with the requisite proof of ownership required under Rule 14a-8(b).

28.     In response to the Deficiency Notice, Chevedden sent EMC a copy of a letter from TD Ameritrade to McRitchie stating that McRitchie has continuously held 200 shares of EMC's common stock since December 30, 2010 (*see* Nov. 20, 2013 e-mail from Chevedden, attaching Nov. 15, 2013 TD Ameritrade letter (attached hereto as Exhibit F)), and resubmitted the Proposal to EMC on November 15, 2013 (*see* Ex. B).

29.     Also in response to the Deficiency Notice, McRitchie wrote EMC a letter that repeated the assertion that Chevedden is entitled to function as McRitchie's agent in advocating for the Proposal.  (*See id.* at 3.)

30.     Chevedden has not provided adequate proof of *his* ownership of EMC stock under Rule 14a-8(b) within the required time.  *See* Rule 14a-8(f)(1) (requiring a proponent to provide proof that he satisfies Rule 14a-8's ownership requirement within 14 calendar days from the date

he receives the company's deficiency notification).  Chevedden has twice submitted the Proposal to EMC for inclusion in its Proxy Materials, but he has not timely demonstrated that he continuously owned any shares, let alone the shares Rule 14a-8(b) requires.

31.     Instead, Chevedden attempts to evade Rule 14a-8(b)'s ownership requirement by styling himself as a "proxy" and "agent" of McRitchie.  Chevedden and McRitchie have failed to observe the lesson of *Waste Connections*, where the United States District Court for the Southern District of Texas granted summary judgment to the company—upholding exclusion of a proposal from Chevedden and McRitchie—after the company argued, among other things, that Rule 14a-8(b) foreclosed a proxy-proposal-by-proxy scheme.

32.     While Rule 14a-8(h), which requires that a shareholder personally appear at the shareholders' meeting to present his or her proposal, permits a shareholder to designate a "representative . . . to present a proposal on your [the shareholder's] behalf," it is the only provision in Rule 14a-8 that allows a shareholder to appoint a representative to act on his or her behalf, and that is only for the limited purpose of presenting the shareholder's proposal at the shareholders' meeting.  In explicitly providing for appointment of a representative in the limited context of an in-person presentation at the meeting, Rule 14a-8 implicitly forecloses use of a representative in other aspects under the rule.

33.     Defendants are trying to do an end-run around the rule. McRitchie attempts in his October 21, 2013 letter to give his "proxy for John Chevedden and/or his designee to forward [the Proposal] and to act on [his] behalf regarding [the Proposal], and/or modification of it." (Ex. A, at 3.)  This so-called "proxy" purported to permit Chevedden to submit proposals to EMC on McRitchie's behalf even though Chevedden himself does not satisfy the ownership

requirement for submitting such proposals.  Nothing in Rule 14a-8 contemplates that implausible "proxy-proposal-by-proxy" scheme.

34.     Chevedden's repeated submission of substantially identical forms of "proxy" to multiple other companies underscores that Chevedden is the driving force behind these proposals and that the involvement of any actual shareholders is merely a sham to allow Chevedden to submit proposals at companies at which he is ineligible.

35.     In the Deficiency Notice, EMC pointed out to Chevedden that his apparent attempt to avoid Rule 14a-8(b)'s ownership requirement by serving as a "proxy" for McRitchie cannot be reconciled with the requirements of Rule 14a-8.  (*See* Ex. E, at 3.)

36.     Rather than remedy the deficiency, Chevedden simply resubmitted the Proposal (unaltered) with a new letter from McRitchie (*see* Ex. B), again repeating the assertion that Chevedden is an agent of McRitchie.  But nothing in Rule 14a-8 permits a non-shareholder to subvert Rule 14a-8(b)'s ownership requirement and submit shareholder proposals for inclusion in a company's proxy materials through the guise of a professed agency relationship.

37.     The "proxy-proposal-by-proxy" and "agency" schemes Chevedden has relied on in submitting his Proposal to EMC, and numerous other companies, are contrary both to the plain language of Rule 14a-8 and the purpose of the ownership eligibility requirement.  Accordingly, because Chevedden has failed to satisfy Rule 14a-8(b)'s ownership requirement, and because Rule 14a-8 affords no alternative for a so-called "proxy" or "agent" to submit a proposal, EMC is entitled to a judgment declaring that it may exclude the Proposal from its Proxy Materials.

**B.      The Proposal May Be Excluded Under Rule 14a-8(i)(3) Because The Proposal and Supporting Statement are Impermissibly Vague and Indefinite And, Therefore, False and Misleading**

38.     Rule 14-8(i)(3) permits a company to exclude a shareholder proposal from its proxy materials "[i]f the proposal or supporting statement is contrary to any of the Commission's

proxy rules, including [Rule] 14a-9, which prohibits materially false or misleading statements in proxy soliciting materials."  Rule 14a-9 provides that no solicitation shall be made by means of any proxy materials containing "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  On three alternative grounds specified below, the Proposal and its supporting statement are invalid under Rule 14a-8(i)(3).

### 1.    The Proposal Is Vague and Indefinite

39.    Vague and indefinite shareholder proposals are inherently misleading and therefore excludable under Rule 14a-8(i)(3) because "neither the stockholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires."  Staff Legal Bulletin No. 14B ("SLB 14B") (Sept. 15, 2004); *see also Fuqua Indus., Inc.*, SEC No-Action Letter, 1991 SEC No-Act. LEXIS 488 (Mar. 12, 1991).

40.    *First*, the Proposal is impermissibly vague and indefinite in failing to provide an operative and unambiguous definition of "independence."  As EMC explained in a public filing: Under an employment arrangement, "[EMC Chairman and CEO] will remain at EMC through at least February 2015.  The Board anticipates that at some time prior to such date, [he] will fully transfer his role as CEO to a successor and become solely Chairman of EMC and Chairman of [a related firm]."  EMC Corp., Form 8-K (Sept. 5, 2012).  If an "independent" chairperson is one who holds no corporate office other than on the Board, then the "expect[ed]" transfer would be consistent with the Proposal if the Proposal were adopted.  To the contrary, if an "independent" chairperson is one who has never held a corporate office other than on the Board, then the "expect[ed]" transfer would not be consistent with the Proposal if the Proposal were adopted.

Couched in the broad generality of "independence," the Proposal is profoundly ambiguous, such that EMC and its shareholders cannot determine what its adoption would mean for the governance of EMC.

41.     *Second*, the Proposal is impermissibly vague and indefinite in purportedly limiting the "independence requirement" in that it "shall apply prospectively so as not to violate any contractual obligation at the time this resolution is adopted." (*See* Ex. A, at 4.) The employment arrangement with EMC's Chairman and CEO currently provides for a term "through at least February 2015." It is ambiguous whether the Proposal would deem any extension of the term as merely a continuation contemplated by the current arrangement or a new arrangement. Therefore, it raises serious questions about whether an extension of the term would conflict with the Proposal's "independent" chairperson requirement. If the employment term is extended, there would be no certainty "exactly what actions or measures the proposal requires"—let alone the "reasonable certainty" that Rule 14a-8 has been understood to require.

42.     The undefined terms in the Proposal create impermissible ambiguities, making the Proposal and its supporting statement excludable under Rule 14a-8(i)(3).

### 2.     Chevedden's Submission Impermissibly Refers to External, Non-Public Materials That Chevedden Refuses to Disclose

43.     The Proposal refers to and relies heavily upon non-public source material from an entity called GMI Ratings. References in a proposal or supporting statement to external sources can be deemed contrary to Rule 14a-9 and, therefore, warrant exclusion of the proposal under Rule 14a-8(i)(3). *See* Staff Legal Bulletin No. 14 (July 13, 2001), Item F.1; *Freeport-McMoRan Copper & Gold Inc.*, 1999 SEC No-Act. LEXIS 389 (Feb. 22, 1999).

44.     When a shareholder proposal or supporting statement refers to publicly-unavailable documents, the company is unable to access the documents to verify that the

references to those documents are not materially false or misleading in violation of Rule 14a-9. In that situation, the proponent of the proposal is best situated to disclose the publicly-unavailable documents. *See* SEC Legal Bulletin No. 14G ("SLB 14G") (Oct. 16, 2012), Item D.2; *cf. The Charles Schwab Corp.*, 2012 SEC No-Act. LEXIS 230 (Mar. 7, 2012).

45.     Here, the supporting statement for the Proposal contains four paragraphs that refer to information purportedly reported by GMI Ratings, an entity that does not release its reports to the public without subscription.  When Chevedden submitted the Proposal, he did not provide EMC with the GMI documents that the Proposal and supporting statement purported to paraphrase.

46.     In response to that omission, the Deficiency Notice specifically requested a copy of the GMI Ratings report(s) which the supporting statement purported to paraphrase.  The Deficiency Notice explained that supplying the requested material was necessary so that EMC could "verify that the referenced statements are attributable to GMI Ratings and are not being presented in the supporting statement in a false and misleading manner."  (Ex. E, at 5.)

47.     On November 13, 2013, Chevedden sent EMC an e-mail containing a statement that appears to originate from GMI regarding the limited availability of complimentary copies of, and subscription options for, the reports.  (*See* Nov. 13, 2013 e-mail from Chevedden (attached hereto as Exhibit G).)  But Chevedden has failed to provide EMC with a copy of the GMI Ratings material he purported to paraphrase.

48.     Because the GMI Ratings website offers multiple different GMI products for sale, it is impossible to independently verify the accuracy of the purported paraphrasing.  Unless provided with the source document(s) by Defendants directly, EMC and its shareholders have no way of verifying whether the GMI statements have been accurately repeated or instead have been

taken out of context and presented in a false or misleading light, or whether the information upon which the statements rely is up to date or outdated.

49.     The unverifiable paraphrases of undisclosed materials therefore make the Proposal and its supporting statement excludable under Rule 14a-8(i)(3).

**3.     The Supporting Statement Contains Assertions That are False And Irrelevant To the Subject Matter of the Proposal**

50.     Rule 14a-9 expressly prohibits false and misleading statements, and Rule 14a-8(i)(3) also permits a proposal to be excluded if "substantial portions of the supporting statement are irrelevant to a consideration of the subject matter of the proposal, such that there is a strong likelihood that a reasonable shareholder would be uncertain as to the matter on which she is being asked to vote." SLB 14B, Item B.4; *Entergy Corp.*, 2007 SEC No-Act. LEXIS 216 (Feb. 14, 2007); *Boise Cascade Corp.*, 2001 SEC No-Act. LEXIS 122 (Jan. 23, 2001).

51.     Here, the supporting statement contains an objectively and demonstrably false assertion that "[n]ot one independent director had expertise in risk management." Contrary to that assertion, numerous independent members of the Board have "expertise in risk management," including one who has an "expertise in risk analysis" and another who served previously as chairman of a "diversified global insurer" and leading "property and casualty insurer." EMC Corp., Proxy Materials for the 2013 Annual Meeting of Shareholders (Mar. 21, 2013), at 11-12.

52.     Moreover, substantial portions of the supporting statement—including statements about environmental impact disclosure practices, campaign contribution policies, and executive compensation—are irrelevant to the Proposal's request for an independent Chairman. It would be improper for EMC to be forced to include objectionable, potentially damaging, and irrelevant statements in its Proxy Materials that have the potential to confuse shareholders.

53.     The false and irrelevant assertions about EMC therefore make the Proposal and its

supporting statement excludable under Rule 14a-8(i)(3).

### COUNT I
### (DECLARATION OF INVALIDITY UNDER RULE 14a-8(a))

54.     EMC repeats each of the allegations above as if fully set forth herein.

55.     For the reasons set forth above, Defendants have not complied with the ownership

requirement of Rule 14a-8(b), and Rule 14a-8 affords no alternative for so-called "proxies" or

"agents."

56.     EMC notified Defendants of the procedural deficiencies of the Proposal—namely,

Chevedden's failure to prove his ownership of the requisite number of shares of the company,

and his apparent reliance on an untenable "proxy" method of submission—through its

Deficiency Notice.

57.     To date, the procedural deficiencies, described in detail above, have not been

remedied and, regardless, the time Rule 14a-8(f)(1) permits for remedying such deficiencies has

long passed.

58.     EMC's 2014 Meeting is scheduled to occur on April 30, 2014, and the Proxy

Materials for that meeting must be finalized by March 14, 2014, in advance of the March 21,

2014 mailing to shareholders.  Given these time constraints, EMC must know by March 11, 2014

whether it may exclude the Proposal from its Proxy Materials. Accordingly, EMC seeks from

this Court a declaratory judgment that EMC may exclude the Proposal from its Proxy Materials

based on Defendants' failure to comply with Rule 14a-8(b) on or before March 11, 2014.

59.     If this Court is not able to grant EMC judgment on Count I on or before March

11, 2014, EMC prays for a declaration that, if this Court grants EMC judgment after March 11,

2014 and before the annual meeting, on April 30, 2014, that EMC need not require its

shareholders to vote on the Proposal at the meeting.  In the alternative, because EMC lacks an

adequate remedy at law and will be otherwise irreparably harmed, EMC seeks a preliminary and

permanent injunction preventing the Defendants and those working in connection with them

from: (i) continuing to seek the inclusion of the Proposal in EMC's Proxy Materials; (ii)

presenting in any way the Proposal at EMC's shareholder meeting; and (iii) proceeding in

violation of Rule 14a-8.

**COUNT II**
**(DECLARATION OF INVALIDITY UNDER RULE 14a-8(i)(3))**

60.     EMC repeats each of the allegations above as if fully set forth herein.

61.     Defendants' submission to EMC is substantively deficient for all three

independent reasons set forth above—the impermissibly vague nature of the Proposal; the

supporting statement's reference to external, non-public materials that have not been provided to

EMC; and the supporting statement's substantial references to matters that are false and

irrelevant to the subject of the Proposal.  As such, the Proposal may be excluded under Rule 14a-

8(i)(3).

62.     A declaratory judgment to this effect is needed promptly, because of the timing

and logistical constraints described.  EMC must know by March 11, 2014 whether it can exclude

the Proposal from its Proxy Materials.  Accordingly, EMC seeks from this Court a declaratory

judgment that EMC may exclude the Proposal from its Proxy Materials under Rule 14-8(i)(3) on

or before March 11, 2014.

63.     If this Court is not able to grant EMC judgment on Count II on or before March

11, 2014, EMC prays for a declaration that, if this Court grants EMC judgment after March 11,

2014 and before the annual meeting, that EMC need not require its shareholders to vote on the

Proposal at the meeting.  In the alternative, because EMC lacks an adequate remedy at law and

18

will be otherwise irreparably harmed, EMC seeks a preliminary and permanent injunction preventing the Defendants and those working in connection with them from: (i) continuing to seek the inclusion of the Proposal in EMC's Proxy Materials; (ii) presenting in any way the Proposal at EMC's shareholder meeting; and (iii) proceeding in violation of Rule 14a-8.

## PRAYER FOR RELIEF

WHEREFORE, EMC respectfully requests that this Court enter judgment as follows:

1.  Declaring that EMC may exclude the Proposal from EMC's Proxy Materials for the 2014 Meeting based on a failure to comply with Rule 14a-8(b);

2.  Declaring that EMC may exclude the Proposal from EMC's Proxy Materials for the 2014 Meeting under Rule 14a-8(i)(3);

3.  Declaring that EMC need not require its shareholders to vote on the Proposal at the 2014 Meeting;

4.  Preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from: (i) continuing to seek the inclusion of the Proposal in EMC's Proxy Materials; (ii) presenting in any way the Proposal at EMC's shareholder meeting; and (iii) proceeding in violation of Rule 14a-8;

5.  Awarding EMC costs and disbursements, including attorneys' fees, related to this dispute; and

6.  Such other and further relief as the Court deems just and proper.

///

///

Dated: January 30, 2014

EMC CORPORATION
By its attorneys,

/s/  Ian D. Roffman
Ian D.  Roffman (BBO # 637564)

Paul T. Dacier (BBO #616761)
Susan I. Permut (BBO #551649)
Leigh Earls Slayne (BBO #567865)
EMC CORPORATION
176 South Street
Hopkinton, Massachusetts 01748
(508) 435-1000

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210-2604
(617) 439-2421 (phone)
(617) 310-9421 (fax)
iroffman@nutter.com

Adam H. Offenhartz (*applicant for pro hac vice*)
Indraneel Sur (*applicant for pro hac vice*)
Ilissa Samplin (*applicant for pro hac vice*)
GIBSON, DUNN & CRUTCHER
200 Park Avenue
New York, New York 10166
(212) 351-4000 (phone)
(212) 351-4035 (fax)