# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EMC CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action |
| | ) No. 1:14-cv-10233-MLW |
| JOHN CHEVEDDEN and | ) |
| JAMES MCRITCHIE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210-2604
Phone:  (617) 439-2421
Fax:  (617) 310-9421

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone:  (212) 351-4000
Fax:  (212) 351-4035

Attorneys for Plaintiff EMC Corporation

February 4, 2014

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................ii

TABLE OF ABBREVIATIONS ....................................................................................... v

INTRODUCTION .............................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ....................................................................... 4

LEGAL STANDARDS ON THIS MOTION.................................................................... 7

ARGUMENT ..................................................................................................................... 9

I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN EMC'S FAVOR
AND ENTER AN ORDER DECLARING THAT EMC MAY PROPERLY
EXCLUDE THE CHEVEDDEN PROPOSAL FROM ITS PROXY MATERIALS
AND CONSIDERATION AT ITS 2014 ANNUAL MEETING ................................. 9

     A.     Because Chevedden Has No Economic Stake Or Investment Interest
In EMC, He Does Not Satisfy The Threshold Eligibility Requirement
That A Shareholder Proposal Be Made By An Actual Shareholder.................... 10

     B.     The Chevedden Proposal Is Defective On Multiple Different Grounds............... 11

          1.     The Chevedden Proposal Is Vague And Indefinite And
Would Create Intractable Implementation Problems................................... 11

          2.     The Chevedden Proposal Contains A False And Misleading
Statement..................................................................................................... 13

          3.     The Chevedden Proposal Contains Statements That Are
Irrelevant To The Proposal ......................................................................... 15

          4.     The Chevedden Proposal Impermissibly Refers To Non-Public
Materials That Chevedden Refuses To Disclose ......................................... 16

II.     IN THE ALTERNATIVE, THE COURT SHOULD ENJOIN DEFENDANTS,
PENDING A TRIAL ON THE MERITS, FROM FURTHER SEEKING THE
INCLUSION OF THE CHEVEDDEN PROPOSAL EITHER IN EMC'S
PROXY MATERIALS OR AT EMC'S 2014 ANNUAL MEETING ........................ 17

     A.     EMC Is Likely To Succeed On The Merits Of Its Claims.................................. 17

     B.     EMC Will Suffer Irreparable Harm Without Interim Injunctive Relief .............. 18

     C.     No Undue Harm Will Be Imposed Upon Defendants If Interim Injunctive
Relief Is Granted ............................................................................................... 19

     D.     The Public Interest Will Be Served If Interim Injunctive Relief Is Granted ........ 19

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Clothing & Textile Workers v. SEC,*
    15 F. 3d 254 (2d Cir. 1994)................................................................ 16

*AngioDynamics, Inc. v. Biolitec AG,*
    910 F. Supp. 2d 346 (D. Mass. 2012) ................................................ 19

*Aoude v. Mobil Oil Corp.,*
    862 F.2d 890 (1st Cir. 1988).................................................................. 9

*Apache Corp. v. Chevedden,*
    696 F. Supp. 2d 723 (S.D. Tex. 2010) ...................................... 1, 9, 20

*Apache Corp. v. Chevedden,*
    No. 4:12-cv-00137, slip op. (S.D. Tex. Feb. 13, 2012) ................... 1, 20

*Bender v. Jordan,*
    439 F. Supp. 2d 139 (D.D.C. 2006) .................................................. 18

*Capital Real Estate v. Schwartzberg,*
    917 F. Supp. 1050 (S.D.N.Y. 1996)................................................... 19

*Gillette Co. v. RB Partners,*
    693 F. Supp. 1266 (D. Mass. 1988) .................................................. 16

*Hoffman v. Reali,*
    973 F.2d 980 (1st Cir. 1992)................................................................. 7

*KBR Inc. v. Chevedden,*
    No. H-11-0196, 2011 WL 1463611 (S.D. Tex. Apr. 4, 2011)........... 1, 20

*KBR Inc. v. Chevedden,*
    478 F. App'x 213 (5th Cir. 2012) ................................................ 1, 8, 9

*Lichtenberg v. Besicorp Grp. Inc.,*
    43 F. Supp. 2d 376 (S.D.N.Y. 1999)................................................. 18

*Loudon v. Archer-Daniels-Midland Co.,*
    700 A.2d 135, 141 (Del. 1997) ......................................................... 14

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007)............................................................................ 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Mills v. Elec. Auto-Lite,*
  396 U.S. 375 (1970) ................................................................................. 18

*Progressive Consumers Fed. Credit Union v. United States,*
  79 F.3d 1228 (1st Cir. 1996) ..................................................................... 8

*Riva v. Ashland, Inc.,*
  No. 09-cv-12074, 2013 WL 1222393 (D. Mass. Mar. 26, 2013) ............... 8

*Roosevelt v. EI Du Pont de Nemours & Co.,*
  958 F. 2d 416 (D.C. Cir. 1992) ................................................................. 4

*Ross-Simons of Warwick v. Baccarat,*
  102 F.3d 12 (1st Cir. 1996) ....................................................................... 18

*Waste Connections, Inc. v. Chevedden,*
  No. 4:13-cv-00176, slip op. (S.D. Tex. June 3, 2013) .................... 1, 2, 8, 10, 11, 20

*Westgate Vill. Shopping Ctr. v. Lion Dry Goods Co.,*
  No. 93-3760, 1994 WL 108959 (6th Cir. Mar. 30, 1994) ........................ 7

*Winter v. NRDC,*
  555 U.S. 7 (2008) ...................................................................................... 9

## Statutes, Rules, And Regulations

17 C.F.R. § 240.14a-8 ................................................................................ *passim*

17 C.F.R. § 240.14a-8(b) ........................................................................... 1, 10, 11

17 C.F.R. § 240.14a-8(h) ........................................................................... 11

17 C.F.R. § 240.14a-8(i)(3) ....................................................................... *passim*

17 C.F.R. § 240.14a-9 ................................................................................ 3, 13, 15, 16

17 C.F.R. § 240.14a-16(a)(1) ..................................................................... 5

17 C.F.R. § 229.407(h) .............................................................................. 14

28 U.S.C. § 2201 ....................................................................................... 8

Fed. R. Civ. P. 56(a) ................................................................................. 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

### SEC Releases And Bulletins

Amendments to Rule 14a-8, Exchange Act Release No. 34-20091,
  48 Fed. Reg. 38,218, 38,219 (Aug. 23, 1983)....................................................... 2, 10

Proxy Disclosure Enhancements, Securities Act Release No. 33-9089,
  74 Fed. Reg. 68,334, 68, 334 (Dec. 23, 2009) ......................................................... 14

SEC Staff Legal Bulletin No. 14,
  2001 WL 34886112 (July 13, 2001)………………………………………………….. 4, 16

SEC Staff Legal Bulletin No. 14B,
  2004 WL 3711971 (Sept. 15, 2004)................................................ 2, 3, 12, 13, 15

SEC Staff Legal Bulletin No. 14G,
  2012 WL 4911039 (Oct. 16, 2012).......................................................... 16

### SEC No Action Letters

*Boise Cascade Corp.*,
  2001 WL 78277 (Jan. 23, 2001) ............................................................ 15

*Entergy Corp.*,
  2007 WL 601574 (Feb. 14, 2007)....................................................... 3, 15

*Freeport-McMoRan Copper & Gold Inc.*,
  1999 WL 95481 (Feb. 22, 1999)........................................................ 4, 16

*TRW Inc.*,
  2001 SEC No-Act. LEXIS 102 (Jan. 24, 2001) ....................................... 11

## TABLE OF ABREVIATIONS

| | |
|---|---|
| **Chevedden** | John Chevedden |
| **Chevedden Proposal or Proposal** | Purported shareholder proposal to EMC submitted by John Chevedden |
| **Company** | EMC Corporation |
| **Defendants** | John Chevedden and James McRitchie |
| **Deficiency Notice** | Letter from EMC to John Chevedden, dated Nov. 11, 2013 (Ex. C) |
| **EMC** | EMC Corporation |
| **(Ex. __)** | Exhibit to the Declaration of Rachel Lee, dated Feb. 4, 2014 |
| **McRitchie** | James McRitchie |
| **Plaintiff** | EMC Corporation |
| **(Roffman Ex.)** | Exhibit to the Declaration of Ian D. Roffman, dated Feb. 4, 2014 |
| **Rule 14a-8** | 17 C.F.R. § 240.14a-8 |
| **SEC** | Securities and Exchange Commission |
| **SOF** | Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute, dated Feb. 4, 2014 |

Plaintiff EMC Corporation respectfully submits this memorandum of law in support of its motion for summary judgment or, in the alternative, a preliminary injunction.

## INTRODUCTION

Defendant John Chevedden is a serial proponent of shareholder proposals to U.S. corporations.  In the 10-year period from 2000 to 2010, Chevedden accounted for more than 800 proposals considered by the SEC Staff, while *everyone else in the world* accounted for approximately 7,000 such proposals.  (Roffman Ex. A at 3).[1]  To date, no court has required a company to include a Chevedden proposal in its proxy materials for an annual shareholder meeting.[2]

Here, Chevedden has again submitted a proposal that does not satisfy the applicable requirements for inclusion in proxy materials.  Chevedden is not even a shareholder of EMC, yet he has demanded that EMC include his proposal, which is substantively defective in multiple respects, in its proxy materials for its 2014 annual meeting of shareholders.  Because the proxy materials for EMC's 2014 annual meeting must be finalized by March 14, 2014, time is of the essence.  Based on the undisputed material facts, the Court may properly resolve this matter in EMC's favor on summary judgment.  *See KBR Inc. v. Chevedden*, 478 F. App'x 213, 214 (5th Cir. 2012) (affirming summary judgment ruling that "Chevedden was not eligible to have his proposal included in KBR's proxy materials").

Chevedden does not satisfy even the threshold eligibility requirement that a shareholder proposal be made by an actual shareholder.  Under SEC Rule 14a-8(b), 17 C.F.R. § 240.14a-

---

[1]   All references in the form (Roffman Ex. _) are to the exhibits of the Declaration of Ian D. Roffman.  All references in the form (Ex. _) are to the exhibits of the Declaration of Rachel Lee.

[2]   *See*, *e.g.*, *Waste Connections, Inc. v. Chevedden*, No. 4:13-cv-00176, slip op. at 1-2 (S.D. Tex. June 3, 2013) (Roffman Decl. Ex. B), *appeal docketed*, No. 13-20336 (5th Cir. June 18, 2013); *Apache Corp. v. Chevedden*, No. 4:12-cv-00137, slip op. at 1 (S.D. Tex. Feb. 13, 2012) (Roffman Decl. Ex. E); *KBR Inc. v. Chevedden*, No. H-11-0196, 2011 WL 1463611, at *3-4 (S.D. Tex. Apr. 4, 2011), *aff'd*, 478 F. App'x 213 (5th Cir. 2012) (*per curiam*); *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 724 (S.D. Tex. 2010).

8(b), a proponent of a proposal to be included in a company's proxy solicitation materials must provide evidence that he continuously owned at least $2,000 in market value, or 1%, of the company's shares entitled to vote on the proposal for at least one year. This requirement was specifically adopted to "requir[e] shareholders who put the company and other shareholders to the expense of including a proposal in a proxy statement to have some measured economic stake or investment interest in the corporation." Amendments to Rule 14a-8, Release No. 34-20091, 48 Fed. Reg. 38,218, 38,219 (Aug. 23, 1983).

Here, Chevedden has no "economic stake or investment interest" in EMC. Instead, Chevedden contends that he is a "proxy" of Defendant James McRitchie. Chevedden attempted this same "proxy-proposal-by-proxy" ploy in connection with a proposal that he sought to include in the proxy materials of Waste Connections, but the district court there granted summary judgment in the company's favor and entered an order declaring that the company could properly exclude Chevedden's proposal. *Compare Waste Connections*, slip op. (Roffman Ex. B), *with* Pls. Rule 56 Br. at 14-16 (Roffman Ex. C). This Court should do the same.

Even if a "proxy-proposal-by-proxy" were proper (and it is not), the Chevedden Proposal would still be properly excluded from EMC's proxy materials because the Proposal is defective on multiple different grounds. *First*, the Chevedden Proposal is vague and indefinite. Under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), vague and indefinite shareholder proposals are properly excluded from proxy materials because "neither the stockholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires." SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *2 (Sept. 15, 2004) ("SLB 14B"). Here, the Chevedden Proposal seeks to "require the Chair of [the] Board of Directors to be an independent member of our Board," yet it does not explain which of the many different standards for

"independence" in the corporate governance context he would have EMC apply.  (Ex. A at 2).

As a result, there would be intractable implementation problems if the Chevedden Proposal were

adopted.  Because there would be no certainty "exactly what actions or measures the proposal

requires," let alone the "reasonable certainty" that Rule 14a-8 has been understood to require, the

Chevedden Proposal has no place in EMC's proxy materials.

*Second*, the Chevedden Proposal contains a statement that is demonstrably false.  *See*

*Entergy Corp.*, 2007 WL 601574, at *1 (Feb. 14, 2007) (concurring with exclusion of

Chevedden proposal because it was false and misleading in violation of SEC Rule 14a-9).  SEC

Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), authorizes exclusion where "the proposal or

supporting statement is contrary to . . . § 240.14a-9, which prohibits materially false or

misleading statements in proxy soliciting materials."  The bald assertion in the Chevedden

Proposal that "[n]ot one independent director [of EMC] had expertise in risk management" (Ex.

A at 2), is directly refuted by publicly available material to which Chevedden has access.

(Roffman Exs. L - P).  EMC should not be forced to include in its proxy materials an objectively

and materially false statement about its directors.

*Third*, the supporting statement to the Chevedden Proposal contains assertions that are

irrelevant to the Proposal, including gratuitous statements about EMC's "environmental impact

disclosures," "campaign contributions," "executive pay," "ability to issue blank-check preferred

stock as a management takeover defense," and "shareholder class action litigation risk."  (Ex. A

at 2).  SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), authorizes exclusion where

"substantial portions of the supporting statement are irrelevant to a consideration of the subject

matter of the proposal, such that there is a strong likelihood that a reasonable shareholder would

be uncertain as to the matter on which she is being asked to vote."  SLB 14B, 2004 WL 3711971,

at *4; *see also Entergy Corp.*, 2007 WL 601574, at *1 (SEC concurrence with exclusion of

Chevedden proposal where the supporting statement contained assertions that were irrelevant to the subject matter of the proposal).

*Fourth*, Chevedden has refused to provide EMC a copy of the "GMI Ratings" report(s) to which assertions in the supporting statement for his proposal are attributed. Indeed, although the Company expressly requested that Chevedden provide a copy of the report(s) so that it could "verify that the referenced statements are attributable to GMI Ratings and are not being presented in the supporting statement in a false and misleading manner" (Ex. C at 4), Chevedden instead sent EMC a website link for GMI Ratings and carefully avoided identifying the specific report(s) on which he relies, even though GMI Ratings' website reflects that it has multiple different products for subscription. References in a shareholder proposal to external sources may properly be grounds for exclusion under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3). *See also* SEC Staff Legal Bulletin No. 14, 2001 WL 34886112, at *15-16 (July 13, 2001) ("SLB 14"); *Freeport-McMoRan Copper & Gold Inc.*, 1999 WL 95481, at *1 (Feb. 22, 1999).

For these and all the other reasons set forth herein, Plaintiff EMC respectfully requests that the Court (i) grant summary judgment in its favor and enter an order declaring that EMC need not include the Chevedden Proposal in the proxy materials for its 2014 annual meeting or otherwise require its shareholders to vote on the Chevedden Proposal; or (ii) in the alternative, enter an order enjoining Defendants, pending a trial on the merits, from continuing to seek the inclusion of the Chevedden Proposal in EMC's proxy materials or otherwise presenting the Chevedden Proposal at the 2014 annual meeting of EMC's shareholders.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff EMC is a Massachusetts corporation with a 12-member Board of Directors. SOF ¶¶ 1, 3. The common stock of EMC is publicly traded on the New York Stock Exchange. *Id.* ¶ 2. The next annual meeting of EMC's shareholders is scheduled for April 30, 2014. *Id.* ¶ 4.

EMC's distribution method for proxy materials pursuant to SEC rules requires that its proxy materials be distributed to shareholders 40 calendar days prior to the April 30, 2014 annual meeting. *See* 17 C.F.R. § 240.14a-16(a)(1). *Id.* ¶ 5. Thus, EMC's proxy materials must be mailed out, and made electronically available, to shareholders no later than March 21, 2014. In order to meet that deadline, the proxy materials must be finalized on March 14, 2014. *Id.* ¶¶ 6–7.

Defendant John Chevedden is not an EMC shareholder. *Id.* ¶ 10. Nevertheless, on November 3, 2013, Chevedden sent EMC a shareholder proposal and supporting statement and demanded that they be included in EMC's proxy materials for the 2014 annual meeting. *Id.* ¶ 8. This is not the first shareholder proposal that Chevedden has demanded be included in EMC's proxy materials. *Id.* ¶ 9. Dating back to 2005, Chevedden has submitted multiple proposals for inclusion in EMC's proxy materials. *Id.*

For his latest Proposal, Chevedden has not provided any evidence that he owns any EMC shares. *Id.* ¶ 10. Instead, Chevedden purports to rely on shares owned by Defendant James McRitchie. *Id.* ¶ 11. Indeed, his November 3, 2013 submission attached a letter from McRitchie stating: "This is my proxy for John Chevedden and/or his designee to forward this Rule 14a-8 proposal to the company and to act on my behalf regarding this Rule 14a-8 proposal, and/or modification of it, for the forthcoming shareholder meeting." (Ex. A at 1).

On November 11, 2013, EMC sent a letter notifying Chevedden of multiple deficiencies in his November 3, 2013 submission. (Ex. C). Among other things, the Deficiency Notice explained that "Rule 14a-8 does not provide for a shareholder to submit a shareholder proposal through the use of a proxy such as that purportedly provided by Mr. McRitchie." (*Id.* at 2).

On November 15, 2013, Chevedden responded by "resubmit[ting]" the proposal that he sent on November 3, 2013, and forwarding a purported letter from McRitchie stating that he had "authorized John Chevedden to act as [his] agent regarding this Rule 14a-8 proposal before,

during, and after the forthcoming shareholder meeting." (Ex. F at 2). McRitchie has had no direct communications with EMC regarding the Chevedden Proposal. SOF ¶ 15. Instead, each piece of purported correspondence from McRitchie has been submitted by Chevedden. *Id.*

The Chevedden Proposal seeks to "adopt a policy, and amend other governing documents as necessary to reflect this policy, to require the Chair of [the] Board of Directors to be an independent member of our Board" (Ex. A at 2), but it does not contain a definition of "independence" or otherwise explain which of the many different standards for "independence" in the corporate governance context Chevedden would have EMC apply. SOF ¶ 17.

The seven-paragraph supporting statement to the Chevedden Proposal asserts, among other things, that "[n]ot one independent director had expertise in risk management." (Ex. A at 2). As reported in publicly available material to which Chevedden has access, EMC's independent directors include a director who has an "expertise in risk analysis" and is currently President and Vice Chairman of an "international consulting firm that assesses and navigates emerging market geopolitical and macroeconomic risks for its clients"; a director who previously served as Chairman of a "diversified global insurer" and leading "property and casualty insurer," a member of the "Risk Committee" of a large financial institution, and "Chair of the Joint Risk Assessment Committee" of a bank; and a director who serves on the "Corporate Governance and Risk Management Committee" of a large financial institution. (Roffman Ex. L at 11-12, Ex. N at 1, Ex. O at 3, Ex. P at 4).

The supporting statement also includes statements not related to the Proposal, including statements about EMC's "environmental impact disclosures," "campaign contributions," "executive pay," "ability to issue blank-check preferred stock as a management takeover defense," and "shareholder class action litigation risk." (Ex. A at 2).

Various assertions in the supporting statement are attributed to one or more non-public reports by an entity called GMI Ratings.  (*Id.*).  In the Deficiency Notice, EMC requested that Chevedden provide a copy of the GMI Ratings report(s) so that the Company could "verify that the referenced statements are attributable to GMI Ratings and are not being presented in the supporting statement in a false and misleading manner."  (Ex. C at 4).  In response, Chevedden e-mailed EMC a website link for GMI Ratings and a statement that appears to originate from GMI Ratings regarding the limited availability of complimentary copies of, and subscription options for, GMI Ratings reports.  (Ex. D).  Although the GMI Ratings website describes multiple different products for sale (Ex. E), and although Chevedden has acknowledged "errors" in a shareholder proposal for another company due to "data supplied by GMI" that was "out of date" (Roffman Ex. Q at 2), Chevedden did not provide EMC a copy of, or otherwise identify for EMC, the GMI Ratings report(s) to which his Proposal refers.  SOF ¶¶ 28–29.

## LEGAL STANDARDS ON THIS MOTION

On its motion for summary judgment, EMC seeks an order declaring that it need not include the Chevedden Proposal in the proxy materials for its 2014 annual meeting or otherwise require its shareholders to vote on the Chevedden Proposal.  Summary judgment is proper when "there is no genuine dispute as to any material fact" showing that "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where, as here, the material facts are based on documentary evidence and the authenticity of the relevant documents is not disputed, summary judgment may properly be granted without discovery.  *See Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992) ("when the record shows . . . discovery will not be likely to produce facts" the non-movant "needs to withstand" summary judgment, "cut[ting] off" discovery is proper); *Westgate Vill. Shopping Ctr. v. Lion Dry Goods Co.*, 1994 WL 108959, at *8 (6th Cir.

Mar. 30, 1994) ("summary judgment is appropriate even where no discovery has occurred, if there is no showing that discovery would have disclosed disputed material facts").

Moreover, a declaratory judgment may be properly entered on a motion for summary judgment.  *See Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1238 (1st Cir. 1996) (directing summary judgment for plaintiff and "an appropriate declaratory judgment order"); *Riva v. Ashland, Inc.*, 2013 WL 1222393, at *13 (D. Mass. Mar. 26, 2013) (granting summary judgment yielding declaratory judgment for movant against third-party defendant).  Here, the dilemma that EMC faces of either including the Chevedden Proposal at the risk of shareholder confusion and a tainted vote at the 2014 annual meeting, "or excluding Chevedden's proposal and exposing itself to potential litigation . . . creates a justiciable dispute between parties" for which the Court may grant  declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[3]  *KBR*, 478 F. App'x at 215; *see also Waste Connections*, slip op. at 1-2 (granting summary judgment and ordering that Chevedden's shareholder proposals "may be excluded from WCN's proxy statement pursuant to 17 C.F.R. § 240.14a-8").

For its alternative motion for a preliminary injunction, EMC seeks entry of an order enjoining Defendants Chevedden and McRitchie, pending a trial on the merits, from continuing to seek the inclusion of the Chevedden Proposal in EMC's proxy materials or otherwise presenting the Chevedden Proposal at the 2014 annual meeting.  A preliminary injunction is appropriate where, as here, (1) the moving party is likely to succeed on the merits; (2) the moving party is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the

---

[3]     An "actual controversy" encompassed by the Declaratory Judgment Act is a "case or controversy" under Article III of the Constitution, and an injury-in-fact that gives a declaratory-judgment plaintiff Article III standing is the prospect of a coercive suit that could be, but has not been, brought against it by the declaratory-judgment defendant.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking" suit by an adversary or regulator—creates an Article III controversy).

"balance of equities tips" in the moving party's favor; and (4) an injunction is "in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  Where, as here, "the critical facts are undisputed," and "the availability of documented evidence dispels the need for taking testimony," a court may properly rule "on the papers" and enter an injunction without "convening an evidentiary hearing." *Aoude v. Mobil Oil*, 862 F.2d 890, 893-94 (1st Cir. 1988).

## ARGUMENT

**I.** **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN EMC'S FAVOR AND ENTER AN ORDER DECLARING THAT EMC MAY PROPERLY EXCLUDE THE CHEVEDDEN PROPOSAL FROM ITS PROXY MATERIALS AND CONSIDERATION AT ITS 2014 ANNUAL MEETING**

As explained below, the Chevedden Proposal should not be included in EMC's proxy materials for the 2014 annual meeting because (i) Chevedden has no economic stake or investment interest in EMC and therefore does not satisfy the threshold requirement that a shareholder proposal be made by an actual shareholder; and (ii) the Chevedden Proposal is in all events defective because it is vague and indefinite, would create intractable implementation problems if adopted, contains a statement that is demonstrably false, contains gratuitous statements that are irrelevant to the Proposal, and refers to purported non-public materials that Chevedden refuses to disclose.

Because the material facts are not disputed, the Court should grant summary judgment in EMC's favor and enter an order declaring that EMC may properly exclude the Chevedden Proposal from its proxy materials for the 2014 annual meeting.  *See KBR*, 478 F. App'x at 214-15 (affirming summary judgment ruling that "Chevedden was not eligible to have his proposal included in KBR's proxy materials"); *Apache*, 696 F. Supp. 2d at 741 (entering declaratory judgment that "Apache may exclude Chevedden's proposal from its proxy materials").

**A.** **Because Chevedden Has No Economic Stake Or Investment Interest In EMC, He Does Not Satisfy The Threshold Eligibility Requirement That A Shareholder Proposal Be Made By An Actual Shareholder**

Chevedden does not satisfy even the threshold eligibility requirement that a shareholder proposal be made by an actual shareholder because he is indisputably *not* an EMC shareholder. SOF ¶ 10. SEC Rule 14a-8(b), 17 C.F.R. § 240.14a-8(b), requires a proponent of a shareholder proposal to provide evidence that he has "continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date you submit the proposal." This minimum-ownership requirement was specifically adopted to "requir[e] shareholders who put the company and other shareholders to the expense of including a proposal in a proxy statement to have some measured economic stake or investment interest in the corporation." Amendments to Rule 14a-8, 48 Fed. Reg. at 38,219.

Chevedden's submissions to EMC are devoid of any representation, much less evidence, that he has any "economic stake or investment interest" in EMC. Instead, Chevedden has submitted a letter from McRitchie to EMC stating that "[t]his is my proxy for John Chevedden and/or his designee to forward this Rule 14a-8 proposal to the company" for inclusion in EMC's proxy materials. (Ex. A at 2). Just last year, Chevedden attempted this exact same "proxy-proposal-by-proxy" ploy in connection with a proposal that he wanted included in the proxy materials of Waste Connections. Indeed, just like here, Chevedden submitted a letter from McRitchie to the company stating that "[t]his is my proxy for John Chevedden and/or his designee to forward this Rule 14a-8 proposal to the company" for inclusion in Waste Management's proxy materials. (Roffman Ex. D). The U.S. District Court for the Southern District of Texas granted summary judgment in the company's favor and ordered that Chevedden's shareholder proposal "may be excluded from WCN's proxy statement pursuant to 17 C.F.R. § 240.14a-8" after the company argued, among other things, that Rule 14a-8(b)

foreclosed Chevedden's attempt to impose a "proxy-proposal-by-proxy." *Compare Waste Connections*, slip op. at 1-2 (Roffman Ex. B), *with* Pls. Rule 56 Br. at 14-16 (Roffman Ex. C).[4]

Any attempt by Chevedden to rely on SEC Rule 14a-8(h), 17 C.F.R. § 240.14a-8(h), would be misguided.  Under Rule 14a-8(h), a shareholder may, in the limited context of an in-person presentation at a shareholders' meeting, designate a "representative" to "present the proposal on [the shareholder's] behalf."  There is no similar designee provision for a demand by a non-shareholder that a written shareholder proposal be included, at a company's expense, in the company's proxy materials.  Thus, there is no basis in the SEC rules for Chevedden's "proxy-proposal-by-proxy" scheme.

Consistent with *Waste Connections*, the Court should grant summary judgment and enter an order declaring that EMC may properly exclude the Chevedden Proposal from the proxy materials for the 2014 annual meeting.

## B.   The Chevedden Proposal Is Defective On Multiple Different Grounds

Even if a "proxy-proposal-by-proxy" were proper (and it is not), the Proposal would still be properly excluded from EMC's proxy materials because the substance of the Proposal is defective on multiple different grounds, and EMC is not permitted to revise or correct it.

### 1.   The Chevedden Proposal Is Vague And Indefinite And Would Create Intractable Implementation Problems

The Proposal is vague and indefinite.  Under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), vague or indefinite shareholder proposals are properly excluded from proxy materials

---

[4]   *See also TRW, Inc.*, 2001 SEC No-Act. LEXIS 102 (Jan. 24, 2001).  There, as here, Chevedden was not a shareholder of the company.  Chevedden nevertheless found a shareholder to sign a letter stating that "[t]his is my legal proxy for Mr. John Chevedden to represent me and my shareholder proposal at the applicable shareholder meeting before, during and after the shareholder meeting."  *Id.* at *43.  Based on the facts presented, the SEC concurred with the company's view that it "may exclude the proposal under rule 14a-8(b) because Thomas Wallenberg is a nominal proponent for John Chevedden, who is not eligible to submit a proposal to TRW."  *Id.* at *1.  EMC acknowledges that SEC staff no-action letters, such as *TRW*, are "informal" and "nonbinding."  *Roosevelt v. El Du Pont de Nemours & Co.*, 958 F. 2d 416, 424 (D.C. Cir. 1992); *KBR*, 2011 WL 1463611, at *3-4 ("the S.E.C. has consistently stated that it will defer to a court's decision on the exclusion of shareholder proposals").

because "neither the stockholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires."  SLB 14B, 2004 WL 3711971, at *2.

Here, the Chevedden Proposal seeks to "require the Chair of [the] Board of Directors to be an independent member of our Board," but it does not explain which of the many different standards for "independence" he would have EMC apply.  (Ex. A at 2).  In the corporate governance context, "independence" has a range of possible meanings depending on whose definition is taken as controlling.  For example, the concept of "independence" has variously been defined in the distinct listing standards the New York Stock Exchange maintains regarding independence of directors, independence of compensation committee members, and independence of audit committee members; the corporate governance policies of the Council of Institutional Investors; and the independence guidelines in voting policies established by Institutional Shareholder Services, a proxy-advisory firm.  (Roffman Exs. F - J).

The failure of the Chevedden Proposal to provide an operative and unambiguous definition of "independence" creates concrete implementation problems.  For example, as EMC explained in a public filing, the employment arrangement with EMC's Chairman and CEO provides that he "will remain at EMC through at least February 2015.  The Board anticipates that at some time prior to such date, [he] will fully transfer his role as CEO to a successor and become solely Chairman of EMC and Chairman of [a related firm]."  (Roffman Ex. K at 2).  If an "independent" Chair of the Board is one who holds no corporate office other than on the Board, then the possible transfer would be consistent with the Proposal if the Proposal were adopted.  However, if an "independent" Chair of the Board is one who has never, or for a period of years has not, held a corporate office other than on the Board, then a transfer would not be consistent with the Proposal if the Proposal were adopted.  Couched in the broad generality of

"independence," the Proposal is profoundly ambiguous, such that neither EMC nor its shareholders can determine what its adoption would mean for the governance of EMC.

Compounding the ambiguity created by the lack of a definition for "independence," the Chevedden Proposal purportedly limits the "independence requirement" in that it "shall apply prospectively so as not to violate any contractual obligation at the time this resolution is adopted." (Ex. A at 2). The employment arrangement with EMC's Chairman and CEO currently provides for a term "through at least February 2015." (Roffman Ex. K at 2). It is ambiguous whether the Proposal would deem any employment past February 2015 as a permissible continuation contemplated by the current arrangement or as an impermissible, new arrangement. Therefore, it raises serious questions about what would conflict with the Chevedden Proposal's "independent" chair requirement. If the employment term were to be extended, there would be no certainty "exactly what actions or measures the proposal requires"—let alone the "reasonable certainty" that Rule 14a-8 has been understood to require. SLB 14B, 2004 WL 3711971, at *2.

Because the Chevedden Proposal is vague and indefinite and would create intractable implementation problems, the Court should declare that EMC may properly exclude it from the proxy materials for the 2014 annual meeting.

### 2. The Chevedden Proposal Contains A False And Misleading Statement

In addition to being vague and indefinite, the Chevedden Proposal contains a statement that is demonstrably false. *See* 17 C.F.R. § 240.14a-9 (prohibiting false and misleading statements); SLB 14B, 2004 WL 3711971, at *4 (explaining that exclusion of a proposal and its supporting statement is proper under Rule 14a-8(i)(3) where "the company demonstrates objectively that a factual statement is materially false or misleading").

The Chevedden Proposal asserts that "[n]ot one independent director [of EMC] had expertise in risk management." (Ex. A at 2). Yet, publicly available material to which Chevedden has access makes clear that a number of EMC's independent directors have risk management expertise, including a director who has an "expertise in risk analysis" and is currently President and Vice Chairman of an "international consulting firm that assesses and navigates emerging market geopolitical and macroeconomic risks for its clients"; a director who previously served as Chairman of a "diversified global insurer" and leading "property and casualty insurer," a member of the "Risk Committee" of a large financial institution, and "Chair of the Joint Risk Assessment Committee" of a bank; and a director who serves on the "Corporate Governance and Risk Management Committee" of a large financial institution. (Roffman Ex. L at 11-12, Ex. N at 1, Ex. O at 3, Ex. P at 4).

EMC should not be forced to include in its proxy materials an objectively and materially false statement about its directors. *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141, 143 (Del. 1997) ("a board is not required to engage in self-flagellation"). Risk management oversight is an important responsibility of a company's board of directors. Indeed, the SEC specifically requires issuers to disclose a board's role in "risk oversight" and aspects of "risk management." *See* 17 C.F.R. § 229.407(h); Proxy Disclosure Enhancements, Release No. 33-9089, 74 Fed. Reg. 68,334, 68, 334 (Dec. 23, 2009). Thus, false statements in EMC's proxy materials about the qualifications of EMC's directors with regard to risk management are particularly important to shareholders being asked to vote for the election of directors in the same proxy materials. (Roffman Ex. L at 1-2).

Because the Chevedden Proposal contains a statement that is demonstrably false, the Court should declare that EMC may properly exclude the Proposal from the proxy materials for

the 2014 annual meeting.  *See Entergy*, 2007 WL 601574, at *1 (concurring with exclusion of

Chevedden proposal because it was false and misleading in violation of SEC Rule 14a-9).

### 3.    The Chevedden Proposal Contains Statements That Are Irrelevant To The Proposal

The Chevedden Proposal also contains statements that are irrelevant to the Proposal.

SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), permits exclusion where "substantial portions

of the supporting statement are irrelevant to a consideration of the subject matter of the proposal,

such that there is a strong likelihood that a reasonable shareholder would be uncertain as to the

matter on which she is being asked to vote."  SLB 14B, 2004 WL 3711971, at *4; *see also

Entergy*, 2007 WL 601574, at *1 (SEC concurrence with exclusion of Chevedden proposal

where supporting statement contained assertions irrelevant to the subject matter of the proposal).

Here, the Chevedden Proposal contains gratuitous statements about EMC's

"environmental impact disclosures," "campaign contributions," "executive pay," "ability to issue

blank-check preferred stock as a management takeover defense," and "shareholder class action

litigation risk" that are irrelevant to the Proposal that the Chair of EMC's Board be

"independent."  (Ex. A at 2).  EMC should not be forced to include in its proxy materials

irrelevant statements that have the potential to confuse shareholders.  Accordingly, the Court

should declare that EMC may properly exclude the Chevedden Proposal from its proxy materials

for the 2014 annual meeting.  *See Boise Cascade Corp.*, 2001 WL 78277, at *1 (Jan. 23, 2001)

(SEC concurrence with exclusion where supporting statement contained assertions regarding

director election process, environment and social issues, and other topics unrelated to a proposal

urging separation of the CEO and chairman roles).

### 4. The Chevedden Proposal Impermissibly Refers To Non-Public Materials That Chevedden Refuses To Disclose

The Chevedden Proposal also impermissibly refers to and relies heavily upon non-public source material from an entity called GMI Ratings.[5]  References in a proposal or supporting statement to external sources can be deemed contrary to Rule 14a-9 and, therefore, warrant exclusion of the proposal under Rule 14a-8(i)(3).  *See* SLB 14, 2001 WL 34886112, at *15-16; *Freeport-McMoRan Copper & Gold Inc.*, 1999 WL 95481, at *1 (improper references to newspaper articles provided grounds for exclusion).  When a shareholder proposal or supporting statement refers to publicly-unavailable documents, the company is unable to access the documents to verify that the references to those documents are not false or misleading.  In that situation, the proponent of the proposal is best situated to disclose the publicly-unavailable documents.  SEC Legal Bulletin No. 14G, 2012 WL 4911039, at *4 (Oct. 16, 2012).

Here, four of the seven paragraphs in the supporting statement for the Proposal refer to information purportedly contained in one or more GMI Ratings reports.  (Ex. A at 2).  Despite EMC's requests, however, Chevedden has failed to provide the GMI Ratings report(s).  Instead, Chevedden opted to send EMC an e-mail with a website link and an apparent statement from GMI Ratings regarding the limited availability of complementary copies of, and subscriptions methods for, GMI Ratings reports.  (Ex. D).  Although the GMI Ratings website describes multiple different products for sale (Ex. E), and although Chevedden has acknowledged "errors"

---

[5]   In a December 20, 2013 letter, EMC sought the SEC staff's concurrence that the Chevedden Proposal could be excluded on this basis alone.  (Ex. H).  Although on January 16, 2014 the SEC staff notified EMC of its informal view that it did not agree with EMC on this one basis for exclusion (Ex. I), the SEC staff did not "adjudicate the merits" of EMC's position; rather, the SEC has explained that "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials." SEC Div. of Corp. Fin., Informal Procedures Regarding Shareholder Proposals, *available at* http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm.  *See also Amalgamated Clothing v. SEC*, 15 F. 3d 254, 258 n.3 (2d Cir. 1994) (SEC staff's informal no-action letters are not "formal policy statements or rule-making orders of the SEC"); *Gillette Co. v. RB Partners*, 693 F. Supp. 1266, 1288 (D. Mass. 1988) (Wolf, J.) (finding ad violated Rule 14a-9 notwithstanding SEC's approval of ad and explaining that "the stakes are too great to leave a decision to the instant judgment of the SEC staff").

in a shareholder proposal for another company due to "data supplied by GMI" that was "out of date" (Roffman Ex. Q), Chevedden has refused to even identify the GMI Ratings report(s) to which the assertions in the supporting statement to his Proposal are attributed.

Because Chevedden steadfastly refuses to provide, or even identify, the GMI Ratings report(s) cited in his Proposal, neither EMC nor its shareholders can verify that the statements in the Chevedden Proposal accurately reflect the contents of the report(s) and are not being presented in a false or misleading manner. This is yet another reason why the Chevedden Proposal may be properly excluded from EMC's proxy materials for the 2014 annual meeting.

* * *

Based on the undisputed material facts, there are at least five independent reasons why the Chevedden Proposal does not satisfy the applicable requirements for inclusion in proxy materials. Accordingly, the Court should grant summary judgment in EMC's favor and enter an order declaring that EMC need not include the Chevedden Proposal in the proxy materials for its 2014 annual meeting or otherwise require its shareholders to vote on the Chevedden Proposal.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD ENJOIN DEFENDANTS, PENDING A TRIAL ON THE MERITS, FROM FURTHER SEEKING THE INCLUSION OF THE CHEVEDDEN PROPOSAL EITHER IN EMC'S PROXY MATERIALS OR AT EMC'S 2014 ANNUAL MEETING

In the alternative, EMC requests that the Court enter an order enjoining Defendants, pending a trial on the merits, from continuing to seek the inclusion of the Chevedden Proposal in EMC's proxy materials or otherwise presenting the Chevedden Proposal at the 2014 annual meeting. All of the prerequisites for a preliminary injunction are easily satisfied here:

### A.   EMC Is Likely To Succeed On The Merits Of Its Claim

*First*, for all the reasons explained in Point I above, EMC is likely to succeed on the merits of its claims.

**B.**  **EMC Will Suffer Irreparable Harm Without Interim Injunctive Relief**

*Second*, EMC will suffer irreparable harm if the Court declines to grant interim injunctive relief and EMC is forced to include the Chevedden Proposal in its proxy materials and allow a shareholder vote on the flawed Proposal at the 2014 annual meeting. Retrospective relief following the 2014 annual meeting cannot "undo" the harm that would be imposed by including a shareholder proposal from a non-shareholder that is vague and indefinite and that contains an objectively false statement. *See*, *e.g.*, *Mills v. Elec. Auto-Lite*, 396 U.S. 375, 383 (1970) (because "[u]se of a solicitation that is materially misleading is itself a violation of law," "injunctive relief would be available to remedy such a defect if sought prior to the stockholders' meeting.").

As courts have recognized, irreparable injury results if shareholders are "deprived of their statutory rights to receive accurate information, and to be free of deceptive information, bearing on their investment and voting decisions." *Bender v. Jordan*, 439 F. Supp. 2d 139, 176 (D.D.C. 2006). Here, as explained in Points I.C., I.D., and I.E. above, the Chevedden Proposal contains (i) a statement that is demonstrably false; (ii) statements that are irrelevant to the Proposal but that gratuitously criticize EMC and its directors; and (iii) statements attributable to non-public GMI Rating Report(s) that Chevedden steadfastly refuses to provide. The inclusion of these statements in proxy materials would impugn the reputation of EMC and its Board, and the resulting disparagement would "not accurately [be] measurable or adequately compensable by money damages." *Ross-Simons v. Baccarat*, 102 F.3d 12, 19 (1st Cir. 1996); *see also id.* at 20 n.7 (affirming preliminary injunction because "substantial damage to business reputation is a sufficient showing of irreparable harm to justify preliminary injunctive relief"). Moreover, the inclusion of these misleading statements would likely distort other shareholders' views and taint the vote at the 2014 annual meeting. *See Lichtenberg v. Besicorp Grp.*, 43 F. Supp. 2d 376, 390

(S.D.N.Y. 1999) ("[T]he shareholders were forced to vote on the basis of a materially misleading Proxy.  This alone establishes the irreparable harm sought to be prevented by § 14(a).").

**C.     No Undue Harm Will Be Imposed Upon Defendants If Interim Injunctive Relief Is Granted**

*Third*, the balance of hardships weighs strongly in favor of EMC.  As demonstrated above, EMC will suffer irreparably injury if no interim injunctive relief is granted and EMC is forced to include the Chevedden Proposal in its proxy materials and allow a shareholder vote on the flawed Proposal at the 2014 annual meeting.  By contrast, the specter of any harm to Defendants – let alone greater harm than what EMC would suffer – is particularly remote.  With no stake whatsoever in EMC, Chevedden has no right to hijack EMC's proxy statement or otherwise command the attention of EMC's shareholders, and therefore will suffer no harm at all if interim injunctive relief is granted.  Moreover, neither Chevedden nor McRitchie has any right to demand the inclusion of false and misleading statements in proxy materials, and therefore will not suffer any harm at all if interim injunctive relief preventing the dissemination of false and misleading information is granted.  *See Capital Real Estate v. Schwartzberg*, 917 F. Supp. 1050, 1065 (S.D.N.Y. 1996) (where relief sought is compliance with securities laws, the balance of hardships "tips decidedly in favor of the plaintiffs").

**D.     The Public Interest Will Be Served If Interim Injunctive Relief Is Granted**

*Fourth*, there can be little dispute that the public interest will be served if interim injunctive relief is granted.  "[M]aintain[ing] the possibility of enforcement" of the applicable SEC requirements for shareholder proposals pending a trial on the merits "is in the public interest." *AngioDynamics, Inc. v. Biolitec AG*, 910 F. Supp. 2d 346, 358 (D. Mass. 2012).  The public interest would be particularly well served as Chevedden has a demonstrated history of abusing the shareholder proposal process, including by demanding the inclusion of shareholder

19

proposals in the proxy materials of companies in which he has no economic interest, demanding

the inclusion of shareholder proposals that contain false and misleading statements, and

demanding the inclusion of shareholder proposals accompanied by gratuitous statements that are

irrelevant to the proposals. *See Waste Connections*, slip op. at 1-2 (Roffman Ex. B); *Apache*, slip

op. at 1 (Roffman Ex. E); *KBR*, 2011 WL 1463611, at *3-4; *Apache*, 696 F. Supp. 2d at 724.

\* \* \*

Because all of the prerequisites for a preliminary injunction are satisfied here, the Court

may, in the alternative to summary judgment, properly enter an order enjoining Defendants,

pending a trial on the merits, from continuing to seek the inclusion of the Chevedden Proposal in

EMC's proxy materials or otherwise presenting the Proposal at the 2014 annual meeting.

## <u>CONCLUSION</u>

For all these reasons, the Court should grant summary judgment in Plaintiff's favor or, in

the alternative, enter a preliminary injunction until a final merits determination can be made.

Dated:  February 4, 2014

EMC CORPORATION
By its attorneys,

/s/  Ian D. Roffman
Ian D.  Roffman (BBO # 637564)

Paul T. Dacier (BBO #616761)         NUTTER McCLENNEN & FISH LLP
Susan I. Permut (BBO #551649)       Seaport West
Leigh Earls Slayne (BBO #567865)    155 Seaport Boulevard
EMC CORPORATION             Boston, Massachusetts  02210-2604
176 South Street                    Phone: (617) 439-2421
Hopkinton, Massachusetts 01748     iroffman@nutter.com
Phone: (508) 435-1000

Adam H. Offenhartz (*applicant for pro hac vice*)
Indraneel Sur (*applicant for pro hac vice*)
Ilissa Samplin (*applicant for pro hac vice*)
GIBSON, DUNN & CRUTCHER
200 Park Avenue
New York, New York 10166
Phone: (212) 351-4000

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2014, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/  Ian D. Roffman