UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| EMC CORPORATION, | § | |
|---|---|---|
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action 1:14-cv-10233-MLW |
| | § | |
| JOHN CHEVEDDEN AND | § | |
| JAMES MCRITCHIE, | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |

**DEFENDANTS' MOTION AND SUPORTING MEMORANDUM TO DISMISS (1) FOR LACK OF SUBJECT MATTER JURISDICTION, AND (2) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

---

The Defendants move to dismiss the referenced complaint (1) for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1), and (2) for failure to join an indispensable party, namely the Securities and Exchange Commission (the "SEC"), pursuant to F.R.C.P. 12(b)(7).

## I. INTRODUCTION

Section 21 of the Securities Exchange Act of 1934 (the "Act") delegates to the SEC the authority to enforce the Act, including Section 14(a) and the rules adopted pursuant to Section 14(a), including Rule 14a-8. In Paragraph 24 of its complaint, EMC states that it "sought the SEC Staff's concurrence in its exclusion of the [Defendants' Rule 14a-8] Proposal and its supporting statement from EMC's 2014 Proxy Materials" but "the SEC Staff notified EMC of the Staff's informal view that it did not agree with EMC...." Rather than sue the SEC for a declaratory judgment or an injunction, EMC has elected to sue only the Defendants. The Defendants are representing themselves in this action because it is not cost effective to hire an attorney to defend them. For the following reasons, this action should be dismissed.

## II. EMC DOES NOT HAVE ARTICLE III STANDING.

Article III of the Constitution only authorizes federal courts to hear "cases" and "controversies." In *Lujan v. Defenders of Wildlife*, 504 U.S. at 560 (1992), the Supreme Court set forth the constitutional standing requirements for a case or controversy heard by a federal court.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, see *id.*, at 756, 104 S.Ct., at 3327; *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 92 S.Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' "*Whitmore, supra*, 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the Defendants, and not . . . th[e] result [of] the independent action of some third party not before the court." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43, 96 S.Ct., at 1924, 1926. (footnote omitted).

EMC adamantly maintains that it may legally exclude the Defendants' Rule 14a-8 proposal from its proxy materials. Having failed to persuade the SEC to concur with its position (*EMC Complaint*, Par. 24), EMC appeals to this Court to issue a declaration or an injunction in affirming its position. To that end, EMC conclusively claims that, absent a favorable ruling from this Court, it will "[incur] the risks of liability to Defendants or an SEC enforcement action." However, EMC does not, and cannot, truthfully allege that the Defendants have threatened to take any action against EMC regardless of what EMC does.[1] In particular, EMC does not say

---

[1] The Defendants believe that EMC would violate Rule 14a-8 if it excludes their proposal from its proxy materials. However, EMC does not, and cannot, truthfully allege that the Defendants have threatened to sue EMC or take any other adverse action against EMC if EMC acts on its belief that it is entitled to exclude their proposal from its proxy materials. The fact that the parties disagree about this issue is not sufficient to constitute a cognizable injury in fact. *Already, LLC v. Nike, Inc.* 133 S. Ct. 721 (2013) ("A case [is not] a 'Case' or 'Controversy' for purposes of Article III…'when…the parties lack a legally cognizable interest in the outcome.' *Murphy v. Hunt*, 455 U. S. 478, 481 (1982) (*per curiam*) (some internal quotation marks omitted). No matter how vehemently the

2

what imminent concrete injury *by the Defendants* it will incur if it simply acts upon its own view that it is entitled to exclude the Defendants' proposal from its proxy materials.

In *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), the Supreme Court held that a federal court only has subject matter jurisdiction to issue prospective relief if (1) the plaintiff's "threatened injury must be certainly impending to constitute injury in fact," and (2) the plaintiff "*cannot rely on speculation about the unfettered choices made by independent actors not before the court.*" (emphasis added). EMC's complaint is critically flawed because it does not allege that *the Defendants* will cause it to incur any injury, let alone an injury that is "certainly impending," if EMC does what it says it has a right to do. Instead, EMC's claimed potential injury is solely the result of the SEC's "unfettered choices." However, EMC has not sued the SEC. Hence, EMC really seeks a prohibited advisory opinion from this Court. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). As the *Bennett* Court explained:

> Redress is sought *through* the court, but *from* the Defendants. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement — what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion — is in the settling of some dispute *which affects the behavior of the Defendants towards the plaintiff.* Hewitt v. Helms, 482 U.S. 755, 761 (1987) (emphasis in original).

Even if EMC could demonstrate that it faced a high probability of an SEC enforcement action if it excludes the Defendants' proposal (as EMC claims it may do), EMC must also show that its threatened injury would likely be redressed by a declaratory judgment against the Defendants. *id.* However, since the SEC is not a party in this case, it cannot be bound by any judgment issued against the Defendants. Therefore, EMC's claimed injury of a potential enforcement action by the SEC cannot be redressed by a favorable judgment against the Defendants.

---

parties...dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." [*Alvarez v. Smith*, 558 U. S. 87, 93 (2009)].)

In *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), the Supreme Court counseled federal courts that, to "[keep] the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of [an] important dispute and to 'settle' it for the sake of convenience and efficiency." (citation and footnote omitted). To summarize, EMC (1) has not asserted a certainly impending injury in fact caused by the Defendants, and (2) has failed to meet the Article III requirement for redressability. Thus, EMC does not have constitutional standing to obtain the declaratory judgment or injunction it seeks. Consequently, this action should be dismissed for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1).

### III. EMC HAS NO PRIVATE CAUSE OF ACTION TO ENFORCE SEC RULE 14A-8.

Section 14(a) of the Act is as follows:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 12.

Rule 14a-8 states that it was adopted by the SEC pursuant to Section 14(a) to "[address] when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders."

Although one court has found that shareholders have an implied private right to enforce Rule 14a-8 (*Roosevelt v. E.I. Du Pont deNemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992))[2], that opinion heavily relied on *J.I. Case Co. v. Borak*, 377 U.S. 426, (1964) which was later

---

[2] The *Roosevelt* Court did not determine whether issuers, who are not the intended beneficiaries of Rule 14a-8, have an implied private right of action to obtain the sort of declaratory judgment EMC seeks.

4

repudiated by the Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275 (2001).[3] In *Sandoval*, the Supreme Court held that, in determining whether a private cause of action exists to enforce a statute, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286. In reviewing statutory language, courts must first determine whether it contains "rights-creating" language. Such explicit rights-creating language is evidenced in statutory provisions that include phrases such as: "no person...shall...be subjected to discrimination." *Id.* at 289. If rights-creating language is present, a reviewing court must then determine whether the statute's remedial schemes entrust government agencies or private parties with primary responsibility for statutory enforcement. *Id.* at 288-89. Finally, the Court emphasized that statutory intent is the determinative factor in the judicial inquiry, and that when such intent is not manifest, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 287.

---

[3] The *Roosevelt* Court stated:

> Reminding us that *Borak* recognized a private right of action under section 14(a) *as implemented by Rule 14a-9*, Du Pont stresses that the more recent decisions (*Touche Ross* and *Virginia Bankshares*) counsel against continuing judicial implication of private rights. However, in view of the informational right rooted in section 14(a), we see no instruction in current Supreme Court opinions to 'freeze out' private enforcement of Rule 14a-8, a prescription plainly serving the congressional aim to facilitate 'corporate democracy.' *See Virginia Bankshares*, 111 S.Ct. at 2764 (acknowledging some leeway for 'rounding out the scope of an implied private statutory right of action')." (emphasis in original).

If the *Roosevelt* Court was correct about "current Supreme Court opinions," (which is dubious), its finding of an implied private right of action to enforce Rule 14a-8 was repudiated by *Sandoval*. In *Wisniewski v. Rodale, Inc.*, 510 F. 3d 294 (2007), the Court of Appeals for the Third Circuit thoroughly analyzed the chronology of the Supreme Court's jurisprudence regarding the existence of an implied private right of action with respect to federal statutes and concluded (in footnote 9) that *Sandoval* made it clear that *Cort v. Ash*, 422 U.S. 66, (1975) had actually overruled *Borak* seventeen years before *Roosevelt* was decided:

> The *Cort* opinion never explicitly acknowledges that it is rejecting the *Borak* approach. In fact, it cites *Borak* several times in a manner suggesting that it is merely distinguishing the statute at issue in *Borak* from the one addressed in *Cort*. *See Cort*, 422 U.S. at 79-80 & n. 11, 84, 85, 95 S.Ct. 2080. Later cases recognize that *Cort* effectively overruled *Borak*. *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

Since the *Sandoval* Court repudiated *Borak*, *Roosevelt* is no longer reliable law.

5

Section 14(a) contains no "rights-creating" language and no reference to a private remedy. In addition, except for a few provisions, (of which Section 14(a) is not one), enforcement of the Act is delegated exclusively to the SEC in Section 21 of the Act. These facts are determinative of statutory intent. Therefore, an issuer like EMC has no right to bring a lawsuit against a shareholder to enforce Section 14(a) or any rule promulgated under it, or to obtain declaratory relief regarding its provisions. For this additional reason, this lawsuit should be dismissed for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1).

### IV. THE SEC IS AN INDISPENSIBLE PARTY AND HAS NOT BEEN JOINED.

As previously stated, EMC claims it will face the risk of an SEC enforcement action if it excludes the Defendants' proposal from its proxy materials (based upon EMC's assessment that such an action does not violate Rule 14a-8). The Defendants have no reason to believe that an SEC enforcement action against EMC would be certainly impending. However, if EMC wishes to eliminate any risk of an SEC enforcement action, then under F.R.C.P. 19(a)(1), the SEC is clearly an indispensable party to this action and must be joined as a Defendants. Since EMC has not joined the SEC as a Defendant, the Defendants also move that this Court dismiss this lawsuit pursuant to F.R.C.P. 12(b)(7).

Dated: February 6, 2014

Respectfully submitted

John Chevedden
Pro se Defendants
2215 Nelson Ave. No. 205
Redondo Beach, Calif. 90278
PH: 310-371-7872
olmsted7p@earthlink.net

James McRitchie
9295 Yorkship Court
Elk Grove, CA 95758

Certificate of Service

I certify that on February 6, 2014 this answer was sent overnight to the Clerk of the Court. A copy of this answer is also being provided to Ian Roffman, plaintiff's attorney.

_____
John Cheveden