UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| EMC CORPORATION, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action 1:14-cv-10233-MLW |
| | § | |
| JOHN CHEVEDDEN AND | § | |
| JAMES MCRITCHIE, | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |

## DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

### INTRODUCTION

EMC has asked this Court to issue an order declaring that it may exclude the Defendants' Rule 14a-8 proposal from its proxy materials for its 2014 annual meeting or "enjoining Defendants from continuing to seek the inclusion of the Chevedden Proposal in EMC's proxy materials or otherwise presenting the Chevedden Proposal at the 2014 annual meeting of EMC's shareholders." The Defendants moved to dismiss EMC's complaint for (1) lack of subject matter jurisdiction, (2) lack of a private right of action,[1] and (3) failure to join an indispensable party, namely the Securities and Exchange Commission (the "SEC").

In their initial brief supporting their motion to dismiss, the Defendants cited *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), in which the Supreme Court ruled that a "threatened injury must be certainly impending to constitute injury in fact" and "[a]llegations of possible future injury" are not sufficient. *Whitmore v. Arkansas*, 495 U. S. 149, 158. Pp. 8–10. Since there is no mention of the phrase "certainly impending" in EMC's opposition brief, the

---

[1] In its opposition brief, EMC notes that this ground for dismissal should be "properly viewed as a Rule 12(b)(6) motion." The pro se Defendants, who are not attorneys, stand corrected.

1

Defendants infer that EMC concedes that it is not facing a certainly impending injury. Nor does EMC dispute that the SEC has the independent statutory authority to enforce Rule 14a-8 or that the SEC cannot be bound by a ruling in a case in which it is not a party. However, EMC argues that a less likely injury is sufficient to confer standing on a plaintiff seeking prospective relief, e.g., a declaratory judgment or an injunction. EMC also argues that it has a private right of action and that the SEC is not an indispensable party. EMC is wrong on each count.

## ARGUMENT

### I. EMC LACKS ARTICLE III STANDING.

Without positing a "certainly impending" injury in fact, EMC nevertheless asks this Court to endorse its decision to exclude the Defendants' proposal from its proxy materials because "[they] must be distributed to shareholders 40 calendar days prior to the April 30, 2014 annual meeting" or "no later than March 21, 2014."[2] However, a federal court is not authorized to provide legal advice to a plaintiff that makes "[a]llegations of possible future injury" but fails to demonstrate a "certainly impending injury." *Clapper*.

EMC disputes the Defendants' contention that a certainly impending injury is required to establish standing. According to EMC,

> [T]here is a justiciable dispute between parties for which EMC has Article III standing to seek declaratory relief. It makes no difference that Defendants have not explicitly "threatened to sue EMC." Defs. Br. at 2. As the Supreme Court has explained, the prospect of a coercive suit that could be, but has not been, brought against it by the declaratory-judgment defendant suffices to establish an Article III injury in fact. *See Medtronic v. Mirowski Family Ventures*, __ S. Ct. __, 2014 WL 223040, at *5-7 (Jan. 22, 2014); [*MedImmune, Inc. v. Genentech, Inc.*], 549 U.S. at 129-37.

---

[2] EMC fails to inform the Court that the urgent need it claims to have for a decision is self-imposed, i.e., EMC unilaterally established the meeting date and can unilaterally postpone it with no adverse legal consequences.

2

EMC misreads both decisions.[3] Neither supports the proposition that the mere "prospect of a coercive suit that could be, but has not been, brought against it by the declaratory-judgment defendant suffices to establish an Article III injury in fact," particularly where the probability of such a suit is low. To the contrary, the *Medtronic* and *MedImmune* Courts presumed that a lawsuit by the declaratory judgment defendants in those cases was a virtually certainty in the absence of declaratory relief. For example, in *MedImmune*, the defendant delivered a letter to the plaintiff expressing its belief that a drug marketed by the plaintiff was covered by a patent held by the defendant and that it expected the plaintiff to pay it royalties. According to the Supreme Court, "[The plaintiff] considered the letter to be a clear threat . . . to sue for patent infringement if [the plaintiff] did not make royalty payments as demanded." The *MedImmune* Court reasonably construed that letter as an imminent threat to sue the plaintiff and that threat conferred standing on the plaintiff to seek a declaratory judgment. That is, even though MedImmune believed Genentech's patent was invalid, it feared to cease making licensing payments because the threat of a patent infringement lawsuit by Genentech was real and

---

[3] EMC also cites *KBR Inc. v. Chevedden*, 478 Fed. Appx. 213 (5th Cir. 2012) as support for its contention that Article III standing does not require a certainly impending injury in fact. *KBR* was a case that involved substantially the same fact pattern as this one but it was superseded by, and cannot be reconciled with, *Clapper*. *KBR*'s entire Article III standing analysis is as follows:

> Chevedden also argues that his conflict with KBR lacks the sufficient immediacy and reality to give KBR standing to bring a declaratory judgment action. The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties in "a case of actual controversy." 28 U.S.C. § 2201(a). Chevedden's proposal put KBR to a choice between spending a significant sum to revise its proxy statement, or excluding Chevedden's proposal and exposing itself to potential litigation. The choice between accommodating a potential adverse litigant at substantial expense or taking action that would expose onself [sic] to a suit creates a justiciable dispute between parties. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137, 127 S. Ct. 764, 777 (2007) (holding that a patent licensee could seek a declaration that the patent was invalid without first exposing itself to an infringement suit by withholding payments due under its licensing agreement with the cpatent [sic] holder). Chevedden argues that any possibility of litigation stemming from a decision to exclude his proposal is vitiated by his stipulation that he would not sue if KBR chose that course. But whichever course KBR chose, the decision would implicate KBR's duties to all of its shareholders. Also, wrongly excluding an eligible shareholder's proposal from its proxy statements could expose KBR to an SEC enforcement action.

Thus, the *KBR* court ruled that merely "expos[ing] oneself to a suit" is sufficient to constitute an injury in fact. Subsequently, the Supreme Court, in *Clapper*, made it clear that such a relaxed standard is incorrect.

3

immediate and the loss of such a suit could be financially devastating to MedImmune. *Medtronic* also involved a patent dispute between a patentee and its licensee. Given the huge sums of money at stake in each case, if the declaratory judgment plaintiff ceased to pay royalties, it was logical to assume that, absent a declaration that the patent at issue was invalid, a patent infringement suit by the patentee against the declaratory judgment plaintiff was indeed "certainly impending." Thus, the *MedImmune* Court's concern about the declaratory judgment plaintiff "betting the farm" was based upon circumstances unique to patent disputes. Neither *Medtronic* nor *MedImmune* suggests that a court need not consider the likelihood of a claimed future injury or implies that such injury need not be "certainly impending."

In this case, the "controversy" between the parties, i.e., whether the Defendants have complied with Rule 14a-8, is solely an academic one. EMC has not alleged any threat by the Defendants to interfere with its decision to exclude their proposal from its proxy materials and there is no reason to find a potential "coercive suit" by the Defendants (or any other party) to be other than hypothetical.[4] A hypothetical injury is insufficient to confer standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Contrary to EMC's rhetoric about the Defendants' "demand" that their proposal be included in its proxy materials, they merely submitted a proposal that they believe complies with Rule 14a-8. EMC disagrees and states that it intends to exclude the proposal from its proxy materials. Unlike the declaratory judgment plaintiffs in *MedImmune* and *Medtronic*, EMC can do as it wishes with little fear that the Defendants will commence a lawsuit.

Unable to identify a certainly impending injury caused by the Defendants, EMC claims that, absent a declaratory judgment, if it acts as it wishes, it might be subject to potential

---

[4] None of the Defendants has ever sued or threatened to sue any company to compel it to include a Rule 14a-8 proposal in its proxy materials, nor would it be cost effective for them to bring such a suit.

4

litigation brought by another shareholder or by the SEC.[5] However, the *Clapper* Court rejected speculation about the choices of independent actors that are not before the court to support standing. Even if EMC could demonstrate that it faced a high probability of an SEC enforcement action if it excludes the Defendants' proposal (as EMC claims it may do), EMC must also show that its threatened injury would likely be redressed by a declaratory judgment against the Defendants. *Lujan*. However, since the SEC is not a party in this case, and has the statutory non-delegable authority to enforce Rule 14a-8, (which EMC does not dispute), it cannot be bound by any judgment issued against the Defendants. Therefore, EMC's claimed injury of a potential enforcement action by the SEC cannot be fully redressed by a favorable judgment against the Defendants. *Lujan* ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.') (citation omitted).

Thus, because EMC fails to articulate a certainly impending injury or meet the redressability requirement for Article III standing, this Court lacks the authority to decide this case.

## II. EMC LACKS A PRIVATE CAUSE OF ACTION.

EMC contends that *Roosevelt v. E.I. Du Pont deNemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992), in which the D.C. Circuit found a private right of action to enforce Rule 14a-8, is still reliable authority. According to EMC, "There is thus nothing 'dubious,' Defs. Br. at 5 n.3, about

---

[5] To the Defendants' knowledge, no lawsuit by a shareholder other than the proponent has ever been brought against a company that determined to exclude a Rule 14a-8 proposal from its proxy materials. In the entire seventy-two year history of Rule 14a-8 and its predecessor rule, thousands of shareholder proposals have been submitted to companies. Yet, the SEC has brought just one enforcement action – and that was initiated sixty-eight years ago. See *SEC v. TransAmerica Corp.*, 163 F.2d 511 (3d. Cir. 1947). Thus, it is an overstatement to label as "speculative" EMC's purported fear of a lawsuit from a non-party if it excludes the Defendants' proposal from its proxy materials, let alone to assert that such a lawsuit is "certainly impending."

Also, nothing prevented EMC from requesting no-action relief from the SEC on every conceivable ground and avoiding the impending doom it claims to face. It <u>unilaterally</u> chose not to do so after the staff did not grant its initial request and instead <u>unilaterally</u> chose to sue the *pro se* defendants (and not the SEC) for the same reason a mugger prefers frail victims rather than NFL linebackers. As the *Clapper* Court noted, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves...." *Clapper*. (Citation omitted).

the analysis in Justice Ginsburg's opinion for the D.C. Circuit in *Roosevelt*; rather, it is fully consistent with Supreme Court precedent." Citing *KBR Inc. v. Chevedden*, 2011 WL 1463611 (S.D. Tex. Apr. 4, 2011). EMC argues that Section 14(a) contains the "rights-creating" language required by *Sandoval* to infer Congress' intent to authorize a private cause of action to enforce it. But EMC does not identify any "rights-creating" language in Section 14(a)[6] and the Defendants defy this Court to find it."[7] Plainly, it does not exist.

In *Rauchman v. Mobil Corp.*, 739 F. 2d 205 (1984), the Court of Appeals for the Sixth Circuit expressed "substantial reservations concerning the existence of an implied private cause of action based upon a violation of rule 14a-8." It explained:

> We are especially uncertain in light of recent Supreme Court decisions limiting the availability of private causes of action generally. *See Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Furthermore, rule 14a-8 seems unrelated to prohibiting the inclusion of misleading or dishonest information in proxy statements, which is the primary object of the statute. *See, e.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation."). Rather, the rule is aimed at accomplishing what would appear to us to be "at best a subsidiary purpose of the federal legislation." *Santa Fe Industries v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) (quoting *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975)

---

[6] Section 14(a) of the Act is as follows:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 12.

[7] "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval* (citing *California v. Sierra Club*, 451 U. S. 287, 294 (1981).

Yet, eight years later, the *Roosevelt* court had no doubt about the existence an implied private cause of action based upon a violation of Rule 14a-8. Ironically, one can infer that decisions like *Roosevelt* influenced the majority in *Sandoval* to emphatically declare that it is not the role of courts to imply a private cause of action "no matter how desirable that might be as a policy matter, or how compatible with the statute."

Judge (at that time) Ginsburg dutifully cited the Supreme Court's position at that time that "any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy." However, she did not apply the sort of textual analysis mandated by *Sandoval* to discern Congress' intent to provide a private cause of action to enforce a statutory provision or a rule. Rather, in contradistinction to the *Rauchman* court's concern about the differences between Rule 14a-8 and Rule 14a-9, the section in *Roosevelt* entitled "Congressional Intent and Section 14(a)" readily piggybacked on *Borak*. It conducted an extensive analysis of Congressional intent but one that does not comport with *Sandoval*'s focus on textual analysis.

After finding that both Rule 14a-8 and Rule 14a-9 protect "the informational right rooted in section 14(a)." Judge Ginzburg concluded that, since *Borak* endorsed an implied private right to enforce Rule 14a-9, the same is true for Rule 14a-8. Applying what the *Sandoval* Court later labeled an *ancien regime* analysis, the *Roosevelt* Court thus found it desirable as a policy matter and compatible with the statute, to imply a private right to enforce Rule 14a-8:

> Access to management proxy solicitations to sound out management views and to communicate with other shareholders on matters of major import is a right informational in character, one properly derived from section 14(a) <u>and appropriately enforced by private right of action</u>. The right to be informed that Rule 14a-8 affirms is complementary to, although discrete from, the Rule 14a-9 ban on misleading statements in proxy solicitations, the right to accurate information on which the Court focused in *Borak*. (Emphasis added.)

\*\*\*

7

> Reminding us that *Borak* recognized a private right of action under section 14(a) *as implemented by Rule 14a-9*, Du Pont stresses that the more recent decisions (*Touche Ross* and *Virginia Bankshares*) counsel against continuing judicial implication of private rights. However, in view of the informational right rooted in section 14(a), we see no instruction in current Supreme Court opinions to "freeze out" private enforcement of Rule 14a-8, a prescription plainly serving the congressional aim to facilitate "corporate democracy." *See Virginia Bankshares,* 501 U.S. 2764 (acknowledging some leeway for "rounding out the scope of an implied private statutory right of action").

The *Sandoval* Court emphatically rejected policy and compatibility with the statute (as set forth in *Borak*) as reasons to find an implied cause of action. Instead, it demanded that courts use a strict textual approach. Moreover, the Supreme Court subsequently made it clear it would refuse to find a private right of action to enforce any statutory provision that was not "unambiguously conferred." *Gonzaga Univ. v. Doe,* 536 US 273 (2002).

After the following rebuke in *Sandoval*, no court today could assert in good faith that "we see no instruction in current Supreme Court opinions to 'freeze out' private enforcement of Rule 14a-8":

> Respondents would have us revert in this case to the understanding of private causes of action that held sway 40 years ago when Title VI was enacted. That understanding is captured by the Court's statement in *J. I. Case Co. v. Borak,* 377 U. S. 426, 433 (1964), that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" expressed by a statute. We abandoned that understanding in *Cort v. Ash,* 422 U. S. 66, 78 (1975)—which itself interpreted a statute enacted under the *ancien regime*—and have not returned to it since. Not even when interpreting the same Securities Exchange Act of 1934 that was at issue in *Borak* have we applied *Borak*'s method for discerning and defining causes of action. *See Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.,* 508 U.S. 959 at 188(1993) *supra; Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U. S. 286, 291-293 (1993); *Virginia Bankshares, Inc. v. Sandberg, supra,* at 1102-1103; *Touche Ross & Co. v. Redington, supra,* at 576-578. Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink.

Therefore, it is virtually certain that if the *Sandoval* Court would have overruled *Roosevelt*. There is a stark contrast between Judge Ginsburg's *Borak*-inspired policy-based opinion in *Roosevelt* and the strict statutory language-based approach Justice Scalia prescribed in

8

*Sandoval* for determining Congress' intent to establish a private remedy. Unsurprisingly, then-Justice Ginsburg joined Justice Stevens' spirited dissent in *Sandoval* in which he assailed the majority for "a decision unfounded in our precedent and hostile to decades of settled expectations."

In any event, it is plain that *Roosevelt* and *Sandoval* cannot be reconciled. First and most important, the *Roosevelt* court did not identify any rights-creating language in Section 14(a). Nor did it consider that Section 21 of the Act authorizes the SEC to "bring an action in the proper district court of the United States" to enjoin a violation of "any provision of [the Act] or the rules or regulations thereunder" which, absent contrary language, indicates that Congress did not intend to create a private remedy to enforce any particular provision. Lastly, the *Roosevelt* court did not consider that Congress expressly authorized investors to sue under Sections 9(f), 16(b), 18(a), and (more recently) 20(d) of the Act, indicating that no such authorization should be inferred to enforce Section 14(a).

In *Wisniewski v. Rodale, Inc.*, 510 F. 3d 294 (2007), the Court of Appeals for the Third Circuit thoroughly analyzed the Supreme Court's jurisprudence regarding the existence of an implied private right of action with respect to any federal statute and concluded (in footnote 9) that *Sandoval* made it clear that *Cort v. Ash*, 422 U.S. 66, (1975) had actually overruled *Borak* seventeen years before *Roosevelt* was decided:

> The *Cort* opinion never explicitly acknowledges that it is rejecting the *Borak* approach. In fact, it cites *Borak* several times in a manner suggesting that it is merely distinguishing the statute at issue in *Borak* from the one addressed in *Cort*. See *Cort*, 422 U.S. at 79-80 & n. 11, 84, 85, 95 S.Ct. 2080. Later cases recognize that *Cort* effectively overruled *Borak*. See, e.g., *Alexander v. Sandoval*, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

Finally, although EMC insists that *Roosevelt* "is fully consistent with Supreme Court precedent," at least one judge has expressed qualms that it is still good law. In *People for the Ethical Treatment of Animals v. Merck & Co.*, No. 1:11-cv-00765 (D.D.C. Aug. 4, 2011), D.C.

9

District Court Judge Jackson made the following salient remarks to plaintiff's counsel during oral argument:

> I believe also that your brief was unduly dismissive of their argument that *Roosevelt* isn't good law anymore. It certainly is important for – yes, I have to follow what the D.C. Circuit says, but I can tee it up for the D.C. Circuit by saying: "D.C. Circuit, I don't think your opinion is good law anymore in light of more recent Supreme Court decisions" and then the D.C. Circuit can tell me what they think of that."

Of course, this Court does not have to "follow what the D.C. Circuit says." It can, and should conclude that *Roosevelt* found an implied private right of action to enforce Rule 14a-8 despite the absence of any rights-containing language in Section 14(a) and hence, that no such right exists. If a precedent cannot pass muster under *Sandoval* and its progeny – and *Roosevelt* cannot – it must be discarded in that legal dustbin that the *Sandoval* Court called "the *ancien regime*."[8]

### III. THE SEC IS AN INDISPESIBLE PARTY.

EMC wants to have its cake and eat it. In its opposition brief, EMC says it needs a declaratory judgment that it may exclude the Defendant's proposal from its proxy materials, in part, to eliminate the possibility of an SEC enforcement action. But, it has elected not to sue the SEC. Although, as indicated, SEC actions to enforce Rule 14a-8 are as rare as hen's teeth, Section 21 of the Securities Exchange Act of 1934 (the "Act") indisputably delegates to the SEC the authority to enforce the Act, including Section 14(a) and the rules adopted pursuant to Section 14(a), including Rule 14a-8.[9] Whether or not the SEC wishes to be a party in this suit is irrelevant because nothing in the Act permits it to delegate its statutory authority to enforce its rules to private parties. Unless it is made a party (or agrees to abide by any order issued in its

---

[8] This is especially true when the *ancien regime* ruling was issued by a court in a different circuit. There is no doubt that the *Rauchman* court, which was dubious about implying a private right of action to enforce Rule 14a-8 seventeen years before the Supreme Court decided *Sandoval*, would, if faced with the same case today, conclude it does not exist.

[9] Section 21 of the Act, in relevant part, states: (1) "Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title, the rules or regulations thereunder…it may in its discretion bring an action…to enjoin such acts or practices;" and (2) "Whenever it shall appear to the Commission that any person has violated any provision of this title, the rules or regulations thereunder…the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation."

10

absence), an order by this Court cannot preclude the SEC from independently determining that EMC violated Rule 14a-8 and bringing an enforcement action. Therefore, if EMC seeks to immunize itself from an SEC enforcement action, the SEC must be joined.

## **CONCLUSION**

For all of the reasons provided in this brief and the Defendants' initial brief, this action should be dismissed.

Dated: February 18, 2014

Respectfully submitted

John Chevedden
Pro se Defendants
2215 Nelson Ave. No. 205
Redondo Beach, Calif. 90278
PH: 310-371-7872
olmsted7p@earthlink.net

James McRitchie
9295 Yorkship Court
Elk Grove, CA 95758

Certificate of Service

I certify that on February 18, 2014 this answer was sent overnight to the Clerk of the Court. A copy of this answer is also being provided to Ian Roffman, plaintiff's attorney.

*[signature]*
John Chevedden