UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMC CORPORATION,           )
          Plaintiff,       )
                           )
          v.               )          C.A. No. 14-10233-MLW
                           )
JOHN CHEVEDDEN             )
and JAMES McRITCHIE,       )
          Defendants       )

MEMORANDUM AND ORDER

WOLF, D.J.                                        March 16, 2014

     This memorandum is based upon the transcript of the decision
rendered orally on March 7, 2014, allowing Defendants' Motion to
Dismiss for Lack of Subject Matter Jurisdiction.  This memorandum
adds citations, deletes some colloquy, clarifies some language, and
represents the court's decision in this matter for purposes of any
appeal.

                    *    *    *    *    *    *

I.   INTRODUCTION

     For the reasons explained in detail below, the court finds
that the plaintiff, EMC Corporation ("EMC"), lacks standing to
bring this case and that there is not an actual case or controversy
within the meaning of Article III of the Constitution.  Although,
as a legal matter, that finding could end the inquiry, the court
would, even if EMC had Article III standing, exercise its
discretion not to decide EMC's request for a declaratory judgment.
The court would also deny EMC's request for a permanent injunction.

     This case was filed on January 30, 2014.  Plaintiff EMC sued

defendants John Chevedden and James McRitchie, who have made a shareholder proposal for inclusion with EMC's proxy materials to be distributed in connection with EMC's annual shareholder meeting on April 30, 2014. EMC claims that it is entitled to exclude the shareholder proposal, which, if adopted, would require that the Chair of the EMC Board be an independent director.

EMC argues that Mr. Chevedden does not own EMC stock, as is required to permit him to file a shareholder proposal. EMC also contends that the proposal contains misleading information in violation of Securities and Exchange Commission ("SEC") proxy rules. EMC requests a declaratory judgment that it may exclude the proposal or, in the alternative, an injunction against Chevedden and McRitchie to prevent them from asking that the shareholder proposal be included in the proxy materials. On February 14, 2014, in anticipation of the approaching March 14, 2014 date that EMC says is the deadline to complete its proxy materials for the April 30, 2014 shareholder meeting, the court allowed EMC's motion to expedite this matter. See Feb. 14, 2014 Order.

There are now two pending substantive motions. First, EMC has filed a Motion for Summary Judgment or, in the Alternative, A Preliminary Injunction. EMC argues that it has a right to exclude the shareholder proposal because of multiple deficiencies.

Second, the defendants have filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to Join an

Indispensable Party.  Defendants argue that EMC lacks standing to bring this declaratory judgment action, that there is no private cause of action under SEC Rule 14a-8, and that the action should be dismissed because EMC has failed to include the SEC, an allegedly indispensable party.

The question of jurisdiction must be decided first.  If this court lacks subject matter jurisdiction, that is the end of the inquiry.

Important to the analysis of the question of whether there is an actual case or controversy are the undisputed facts that the defendants have each entered into an irrevocable covenant not to sue EMC if their proposal is excluded from its proxy materials and have irrevocably promised not to present their proposal at the shareholder meeting if it is excluded.

## II.  THE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The court is allowing the defendants' motion to dismiss because the plaintiff has not borne its burden of demonstrating the existence of a "case or controversy," as required by Article III, to permit a judicial decision on a question.  This is an issue of subject matter jurisdiction.

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction."  Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  Where a court decides a Rule 12(b)(1)

motion on the pleadings, it must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522. However, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

Importantly for the instant case, "when a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) involves factual questions . . . the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162–63 (1st Cir. 2007). "[I]f the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim, . . . 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Id. at 163 (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Here, because the facts relevant to the jurisdictional inquiry are distinct from those relevant to the merits of the plaintiff's claim, the court may consider, and is considering, evidence in addition to the allegations.

The requirement that a plaintiff have standing emanates from Article III of the Constitution, which grants courts jurisdiction

only over "Cases" and "Controversies." As the Supreme Court has explained:

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in _every_ federal case, determining the power of the court to entertain the suit.

Warth v. Seldin, 422 U.S. 490, 498 (1975) (emphasis added). This fundamental standing requirement has been applied by the Supreme Court both to actions for declaratory judgments, see, e.g., MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007), and to actions for injunctive relief, see City of Los Angeles v. Lyons, 461 U.S. 95, 110 (1983). Furthermore, when a plaintiff requests more than one remedy, it bears the burden to show standing "for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Lyons, 461 U.S. at 105).

Although the application of the standing doctrine to injunctive relief is relatively straightforward, its application to actions for declaratory judgments deserves some discussion in light of recent Supreme Court rulings. When courts assess whether a "case or controversy" exists in a declaratory judgment action, they do not always discuss standing. As Professors Wright and Miller explain, "[b]ecause 28 U.S.C. §2201 explicitly requires 'a case of actual controversy,' declaratory judgment cases are frequently written in terms that look directly for a case or controversy, without pausing to employ more specific categories of

justiciability."  13 Wright, Miller & Cooper, <u>Fed. Prac. & Proc.</u> §3529 n.30 (3d ed. 2013); <u>see also</u> <u>In re Columbia Univ. Patent Litig.</u>, 343 F. Supp. 2d 35, 43 (D. Mass. 2004) (Wolf, J.) ("The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings . . . ." (quoting <u>BP Chems. Ltd. v. Union Carbide Corp.</u>, 4 F.3d 975, 977 (Fed. Cir. 1993) (internal quotation marks omitted))).  Here, the defendants have framed their argument in terms of standing and the court finds that this is the proper framework for analysis.

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).  The Supreme Court has explained that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution.  <u>MedImmune</u>, 549 U.S. at 126 (citing <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240 (1937)).

Defining the boundaries of the Declaratory Judgment Act jurisdiction, however, has proven challenging.  In its most recent in-depth treatment of the justiciability of cases brought under the Declaratory Judgment Act, the Supreme Court noted:

6

> [Our cases] do not draw the brightest of lines between
> those declaratory-judgment actions that satisfy the case-
> or-controversy requirement and those that do not. Our
> decisions have required that the dispute be "definite and
> concrete, touching the legal relations of parties having
> adverse legal interests"; and that it be "real and
> substantial" and "admi[t] of specific relief through a
> decree of a conclusive character, as distinguished from
> an opinion advising what the law would be upon a
> hypothetical state of facts." [_Aetna_, 300 U.S.] at 240-
> 41. In _Maryland Casualty Co. v. Pacific Coal & Oil Co._,
> 312 U.S. 270, 273 (1941), we summarized as follows:
> "Basically, the question in each case is whether the
> facts alleged, under all the circumstances, show that
> there is a substantial controversy, between parties
> having adverse legal interests, of sufficient immediacy
> and reality to warrant the issuance of a declaratory
> judgment."

_MedImmune_, 549 U.S. at 127. The Court in _MedImmune_ explained that

traditional justiciability doctrines, including standing and

ripeness, may be elements of the case-or-controversy analysis in

declaratory judgment actions. _See_ _id._ at 128 n.8. Standing

depends, in part, on whether "plaintiff is threatened with

'imminent' injury in fact 'fairly . . . trace[able] to the

challenged action of the defendant.'" _Id._ (alterations in

original) (quoting _Lujan v. Defenders of Wildlife_, 504 U.S. 555,

560 (1992)). Although a real risk of enforcement by someone other

than the defendant might arguably, in certain circumstances, also

be sufficient to justify the issuance of a declaratory judgment,

_MedImmune_ essentially instructs courts to decide whether there

would be an imminent, redressable injury in fact if a declaratory

judgment plaintiff refused to accede to a defendant's demands.

Generally, with regard to the constitutional requirements for

7

standing, the plaintiff must demonstrate: (1) injury in fact; (2) causation; and (3) redressability. Lujan, 504 U.S. at 560-61; accord Katz v. Pershing LLC, 672 F.3d 64, 71-72 (1st Cir. 2012). In this case, the first and third requirements are the most important.

An injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (quoting Whitmore, 495 U.S. 149, 158 (1990)).

The redressability requirement is met only when there is a "likelihood that the requested relief will redress the alleged injury." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). When redress of a plaintiff's claim "'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." Lujan, 504 U.S. at 562 (citations omitted) (quoting ASARCO Inc. v. Kadish, 490 U.S.

605, 615 (1989) (opinion of Kennedy, J.)).

Because EMC is the party seeking to invoke federal jurisdiction in this case, it bears the burden of establishing standing. See id. at 561. EMC must support each of the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal quotation marks omitted); accord Bennett v. Spear, 520 U.S. 154, 168 (1997). However, as explained earlier, "if the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim, . . . 'the trial court is free to weigh [] evidence and satisfy itself as to the existence of its power to hear the case.'" Torres-Negrón, 504 F.3d at 163 (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Here, because the facts relating to whether a controversy exists are distinct from the underlying merits of the controversy or the claim, the court has also considered the evidence submitted by the parties.

In this case, the defendants argue that EMC lacks standing because it has not satisfied the Lujan requirements. This

contention is correct.  EMC has not demonstrated that there will be an "imminent injury in fact" in the absence of a declaratory judgment or injunction, or that a declaratory judgment would actually redress any injury in fact that might occur.  Thus, EMC lacks standing to pursue this matter.  Therefore, the motion to dismiss is meritorious.

First, EMC has not carried its burden of demonstrating that, if it decided to exclude the defendants' proposal from its proxy materials, it would face an "imminent injury in fact" attributable to the defendants.

The defendants have made an "irrevocable promise" that they will not file suit against EMC or raise their proposal at EMC's annual meeting if their proposal is excluded from the proxy materials.  As the Supreme Court has recently recognized, a comprehensive covenant not to sue can moot a request for a declaratory judgment.  See Already, LLC v. Nike, Inc., 133 S. Ct. 721, 733 (2013) (finding defendant's counterclaim for declaratory judgment moot when plaintiff voluntarily entered comprehensive covenant not to sue).  Similarly, in In re Columbia University Patent Litigation, 343 F. Supp. 2d 35 (D. Mass. 2004), this court determined that a patentee's covenant not to sue eliminated any Article III controversy between the litigants, see id. at 43.

One court, applying MedImmune, concluded that the defendant's "direct and unequivocal statement that [it] has absolutely no plan

10

whatsoever to sue" did not moot the actual controversy between the litigants. See SanDisk Corp. v. STMicroelectroncis, Inc., 480 F.3d 1372, 1382 (Fed. Cir. 2007). However, that conclusion was reached because the defendant had nevertheless "engaged in a course of conduct that show[ed] a preparedness and willingness to enforce its . . . rights," id. at 1383. In essence, the Federal Circuit found in SanDisk that the defendant was using "the kinds of 'extra-judicial patent enforcement with scare-the-customer-and-run tactics' that the Declaratory Judgment Act was intended to obviate." Id. (quoting Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988)).

Moreover, in SanDisk, the defendant merely said that it had "no plan" to sue, but did not expressly renounce its right to sue. In another case, the Federal Circuit noted this critical distinction between a defendant's statement that it did not intend to sue and a statement that it would not sue. See Benitec Aus., Ltd. v. Nucleonics, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007). Here, where the defendants have "irrevocably promised" not to sue, no justiciable case or controversy exists.

EMC argues that even if there is little or no risk of a suit from the defendants, there is nevertheless a substantial risk that the SEC or other shareholders could bring an action if the defendants' proposal is excluded from the proxy materials. EMC relies on two unpublished Fifth Circuit opinions involving Mr.

11

Chevedden, a defendant here.  See Waste Connections, Inc. v. Chevedden, No. 13-20336, 2014 WL 554566 (5th Cir. Feb. 13, 2014); KBR v. Chevedden, 478 Fed. Appx. 213 (5th Cir. 2012).  Although the Fifth Circuit credited the defendants' promise not to sue, it nevertheless concluded that a "case or controversy" existed because the plaintiffs had "explained to the district court that the exclusion of the Defendants' proposal could lead directly to an SEC enforcement action or liability from other shareholders."  Waste Connections, 2014 WL 554566, at *2.  However, this court, respectfully, finds the Fifth Circuit's reasoning to be unpersuasive, at least on the record of this case.  Among other things, the Fifth Circuit decisions do not recognize that a declaratory judgment stating that a shareholder proposal could be excluded would not, as a matter of law, actually redress the plaintiff's alleged harm or risk.[1]

First, EMC has submitted no evidence that persuades the court that there would be a substantial risk of an enforcement action by the SEC or any shareholder.  Indeed, they have not provided evidence that there is any real risk at all.  In the absence of such evidence this court has no basis to conclude that EMC has

_____

[1] The court notes that, since the March 7, 2014 hearing in this case, Mr. Chevedden's motion to dismiss in a similar case in the Southern District of New York was allowed for substantially the same reasons explained at the hearing and in this Memorandum and Order.  See Omnicom Grp., Inc. v. Chevedden, No. 14 Civ. 0386 (LLS) (S.D.N.Y. Mar. 11, 2014).

established an "imminent injury in fact" that would result from excluding the defendants' proposal from its proxy materials.

The defendants argue that enforcement by any third party would be quite unlikely. The defendants state in their memorandum that the SEC has brought a suit under Rule 14a-8 only once in the 72-year history of 14a-8 and its predecessor rule. <u>See</u> Defs.' Memo. in Reply to Memo. in Opp. to Mot. to Dismiss at 5 n.5 (citing <u>SEC v. TransAmerica Corp.</u>, 163 F.2d 511 (3d Cir. 1947)). They also claim that, to their knowledge, there have been no enforcement suits brought by third-party shareholders under Rule 14a-8. <u>Id.</u> This information is not in an affidavit and, therefore, is not evidence on which the court now relies. However, these statements have not been rebutted by any evidence offered by EMC, which bears the burden of proof.

EMC has provided evidence of the complaints filed by the SEC in three enforcement actions stemming from alleged violations of Section 14(a) and the SEC rules under it. <u>See</u> Roffman Decl. Exs. 7-9 (Docket Nos. 31-7 to 31-9). However, none of those actions involved alleged violations of Rule 14a-8. Rather, in those cases the SEC brought suit because of the defendant corporation's own allegedly misleading statements in its proxy materials, in violation of Rule 14a-9, not because the corporation excluded a shareholder proposal in alleged violation of Rule 14a-8.

Even if there were evidence that indicated a genuine risk of

an enforcement action by the SEC or another shareholder, a declaratory judgment by this court would not bar such suits because those parties would not be collaterally estopped by such a declaration. Due process requires that for collateral estoppel to operate, the party against whom the prior judgment is asserted must have had a "full and fair opportunity to litigate" its claim in the earlier action. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 328 (1979); see also Rodriquez-Garcia v. Miranda-Marín, 610 F.3d 756, 771 (1st Cir. 2010). Here, however, neither the SEC nor any shareholder other than the defendants has had an opportunity to participate in this case, directly or indirectly. Therefore, they would not be bound by any declaratory judgment issued by this court.

This fact also relates to the other major requirement for standing implicated in this case: redressability. The Supreme Court explained in Lujan that the redressability requirement was not met in that case because "resolution by the District Court would not have remedied [the plaintiffs'] alleged injury anyway, because it would not have been binding upon the [relevant government] agencies. They were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced." Lujan, 504 U.S. at 569. This is equally true in the instant case.

EMC argues that the SEC would, nevertheless, feel bound by

14

such a declaratory judgment and would not bring an independent enforcement action. <u>See</u> Opp. to Mot. to Dismiss at 11. EMC contends that the SEC has stated in one of its publications that "only a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials," and that the SEC "do[es] not and cannot adjudicate the merits of a company's position with respect to the proposal." SEC Div. of Corp. Fin., <u>Informal Procedures Regarding Shareholder Proposals</u> (Nov. 2, 2011), http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm.

This statement was, however, made in the context of the SEC's explanation that individual shareholders may file suit to have their proposals included in a company's proxy materials, even if the SEC has issued a no-action letter. The SEC was discussing a situation analogous to that which this court addressed in <u>Gillette Co. v. RB Partners</u>, 693 F. Supp. 1266 (D. Mass. 1988). In that case, the SEC issued no-action letters after a proxy contest had begun, and there were subsequent judicial proceedings to decide, in a more deliberate and adversarial fashion, whether the proxy rules had been violated. <u>See</u> <u>id.</u> at 1287-88.

For the foregoing reasons, the court finds that EMC does not have standing and there is no case or controversy. Therefore, the defendants' motion to dismiss is meritorious.

III. THE DECLARATORY JUDGMENT ACT

Even if there were an Article III case or controversy, the court would exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. §2201, not to issue a declaratory judgment in the present posture of this case.

In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995), the Supreme Court wrote:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver. It created an opportunity rather than a duty to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, the district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

<u>Id.</u> at 288 (footnote omitted). In the instant case, a declaratory judgment would be an advisory opinion without relieving EMC of any uncertainty or insecurity about being sued by the defendants if EMC excludes their proposal. As explained earlier, the defendants have provided a written irrevocable promise not to present their proposal at the annual meeting or to sue EMC if EMC excludes their proposal from its proxy materials. In addition, EMC has not demonstrated the existence of a genuine threat that the SEC or anyone else will sue if the proposal is excluded.

In addition, the court has not heard from the expert SEC,

which has declined to grant a no-action letter.  <u>See</u> Compl. Ex. D at 3.  If EMC had standing, the court would offer the SEC an opportunity to be heard before deciding whether to issue the declaratory judgment EMC requests.  In view of the fact that EMC asserts that it needs a decision by March 14, 2014, there is not time to solicit the participation of the SEC, which has not attempted to intervene in this action despite having notice of it.

Deciding this matter on an expedited basis, when, as here, EMC did not present all of its arguments to the SEC before filing suit would essentially reverse the process contemplated by the scheme established by Congress and would not be in the interests of the administration of justice.  Pursuant to its statutory authority, the SEC has established a process by which companies like EMC can present their proxy materials to the SEC.  <u>See</u> 17 C.F.R. §240.14a-8(j).  The SEC, quickly and informally, will provide advice and in appropriate cases issue no-action letters.  <u>See</u> <u>Apache Corp. v.</u> <u>Chevedden</u>, 696 F. Supp. 2d 723, 729 (S.D. Tex. 2010).  If a shareholder is sufficiently disappointed with the SEC's no-action letter, he or she can bring a suit in federal court to enjoin an annual shareholder meeting or, as happened in <u>Gillette</u>, bring suit after the annual meeting, providing the court an opportunity to develop the record and make a properly informed decision.  <u>See</u> <u>Gillette</u>, 693 F. Supp. at 1287-88.  Issuing a declaratory judgment would reverse this usual process without good cause.

As counsel for EMC confirmed at the March 7, 2014 hearing, EMC did not present to the SEC all of the arguments for excluding the defendants' proposal that it has made in this case. More specifically, on December 20, 2013, EMC's senior corporate counsel, Rachel Lee, sent a letter to the SEC's Division of Corporate Finance to inform the Division of EMC's intent to omit the defendants' proposal from its proxy materials. The company relied solely on the contention that Mr. Chevedden and Mr. McRitchie had violated proxy rules by failing to provide a copy of the GMI Ratings report referenced in their proposal and stated:

> We believe that the proposal may properly be excluded from the 2014 proxy materials pursuant to Rule 14a-8(i)(3) because the supporting statement contained unsubstantiated and misleading references to nonpublic materials that the proponent has not made available to the company for evaluation.

Compl. Ex. C at 4. The letter did not mention any other potential reason to exclude the proposal. EMC did, however, attach to Ms. Lee's letter its prior correspondence with Mr. Chevedden and Mr. McRitchie, which expressed concerns about whether they satisfied the ownership requirements, essentially raising the issue that Mr. Chevedden evidently does not own any EMC stock.

On January 16, 2014, the SEC Division of Corporate Finance declined EMC's request for a no-action letter. In its letter to EMC, the SEC stated:

> The proposal requests that the board adopt a policy, and amend other governing documents as necessary to reflect that policy, to require the chair of the board of

18

directors to be an independent member of the board.

> We are unable to concur in your view that EMC may exclude the proposal or portions of the supporting statement under rule 14a-8(i)(3). We are unable to conclude that you have demonstrated objectively that the proposal or the portions of the supporting statement you reference are materially false or misleading. Accordingly, we do not believe that EMC may omit the proposal or portions of the supporting statement from its proxy materials in reliance on rule 14a-8(i)(3).

Compl. Ex. D at 3.

Two weeks later, on January 30, 2014, EMC filed the instant action in this court, requesting a declaratory judgment that it may exclude the defendants' proposal or, in the alternative, a preliminary and permanent injunction to prevent the defendants from continuing to seek the inclusion of their proposal in the proxy materials. The court is asked to issue a declaratory judgment on an expedited basis, without the advice of the SEC, without much time to consider the matter, and without the full benefit of the adversary process because the defendants are not represented, in part because it would be too expensive for them to engage counsel. There is, therefore, the risk of a decision that is not well informed and properly considered.

More significantly, a declaratory judgment would abet an inappropriate practice by encouraging companies to fail to present all of their arguments first to the SEC to provide it an opportunity to perform its intended role as a source of expeditious, expert advice. As the defendants have argued, issuing

a declaratory judgment would encourage end runs around the SEC, which would deprive shareholders of an inexpensive opportunity to have disputes resolved in their favor. As a practical matter, forcing shareholders to litigate in federal court deprives them of the opportunity to have their positions evaluated by the SEC inexpensively, expertly, and expeditiously. Doing so is not in the interests of justice.

## IV. INJUNCTIVE RELIEF

Finally, in the interest of completeness, the standing analysis also bears on the plaintiff's alternative relief requested, a preliminary and permanent injunction. As EMC intends to finalize its proxy materials by March 14, 2014, if EMC had standing, the court would have consolidated any hearing on a motion for a preliminary injunction with the trial on the merits. <u>See</u> Fed. R. Civ. P. 65(a)(2).

As the First Circuit has explained the standards for a court to grant injunctive relief:

> Under [the] four-part inquiry, injunctive relief may be ordered where (1) the plaintiff has prevailed on the merits, (2) the plaintiff would suffer irreparable injury in the absence of injunctive relief, (3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and (4) the injunction would not adversely affect the public interest.

<u>Joyce v. Town of Dennis</u>, 720 F.3d 12, 25 (1st Cir. 2013). The Supreme Court has indicated that the "injury in fact" prong of the standing requirement is related to the "irreparable injury"

requirement for an injunction:

> The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again -- a "likelihood of substantial and immediate irreparable injury."

Lyons, 461 U.S. at 111 (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)); see also In re Navy Chaplaincy, 534 F.3d 756, 766 (D.C. Cir. 2008) ("[T]o show irreparable harm '[a] plaintiff must do more than merely allege . . . harm sufficient to establish standing.'" (quoting Associated Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity, 950 F.2d 1401, 1410 (9th Cir. 1991))). Accordingly, the absence of an "injury in fact" for standing purposes necessarily forecloses injunctive relief.

The particular and somewhat unusual posture of this case also indicates that the plaintiff would not suffer an "irreparable injury" if the defendants are not enjoined from requesting that their proposal be included in EMC's proxy materials. EMC may decide to exclude it from its proxy materials. As explained earlier, the defendants have pledged not to pursue any action against EMC if it excludes their proposal, there is no demonstrated risk that anyone else will sue EMC, and EMC contends that any enforcement action by the SEC or third party shareholders would be unmeritorious.

Injunctive relief, and in particular the concept of irreparable harm, could exist in the context of a mirror image of

the instant suit, a case in which a shareholder seeks to enjoin the corporation from excluding the proposal.  See, e.g., N.Y.C. Emps.' Ret. Sys. v. Dole Food Co., Inc., 795 F. Supp. 95 (S.D.N.Y. 1992); Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 821 F. Supp. 877, 879 (S.D.N.Y. 1993).  In such situations, courts have acknowledged that a shareholder's inability to present its proposal to other shareholders for another year may constitute "irreparable harm."  See N.Y.C. Emps.' Ret. Sys., 795 F. Supp. at 103.  However, here, EMC would sustain no "irreparable harm" as a result of the defendant's actions.

V.   CONCLUSION

In conclusion, the plaintiff has not demonstrated that it would suffer an imminent injury in fact if it excluded the defendant's proposal or that there is any "case or controversy" between the parties within the meaning of Article III of the Constitution.  The court is, therefore, allowing the defendant's motion to dismiss.

In addition, in the interest of completeness, the court has explained that EMC has also not shown that it would be appropriate for the court to exercise its discretion to issue a declaratory judgment even if EMC had standing.

Finally, even if there were an actual case or controversy, there would not be a proper basis for issuing a permanent injunction.

VI.  ORDER

In view of the foregoing, it is hereby ORDERED that
Defendants' Motion to Dismiss for Lack of Subject Matter
Jurisdiction (Docket No. 19) is ALLOWED and this case is DISMISSED.

_____/s/ Mark L. Wolf_____
UNITED STATES DISTRICT JUDGE